Henry Craig FOSTER, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17554.

United States Court of Appeals Ninth Circuit.

June 10, 1963.

Kenneth Foley, Los Angeles, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before MADDEN, Judge of the Court of Claims, and HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Henry Craig Foster was charged in a two-count indictment with concealing and facilitating the concealment of narcotic drugs in violation of 21 U.S.C. § 174. At his first trial the jury failed to reach a verdict on the first count and acquitted on the second. In a retrial on count one, Foster was found guilty by the jury. He appeals from the judgment of conviction and the sentence entered on the verdict.

Count one alleged that Foster had concealed or facilitated the concealment of approximately one gram of heroin in San Francisco, California, on or about November 10, 1960. The evidence, viewed in a light most favorable to the Government, tended to show that Foster sold 975 milligrams of heroin at the alleged time and place. The sale was made to Thomas Shenandoah Trezban, an informer in the special employ of the Bureau of Narcotics.

Foster first contends that the trial court erred in admitting Government exhibit 1 into evidence. The exhibit consists of two envelopes, one opened and one sealed, fastened together with an office staple. The sealed envelope contains a substance which was identified as heroin and which the Government claims was taken from a package sold by Foster to Trezban. The exhibit was inadmissible, appellant contends, because the Government failed to identify the heroin contained in the envelope as the substance which Foster sold to Trezban.

When the exhibit was offered in evidence, counsel for appellant objected to its admission but stated no reason for his objection. The objection was overruled and the exhibit was received in evidence.[1] Neither at this juncture, nor on the motion to acquit, nor by offered instructions or exceptions to instructions given, did counsel for appellant raise, in the trial court, the objection to this evidence which he now urges.

■■■ Unless there was "plain error" within the meaning of Rule 52(b), Federal Rules of Criminal Procedure, appellant's failure to bring the asserted deficiency in the identification of exhibit 1 to the attention of the trial court precludes consideration of the point on review. Hill v. United States, 9 Cir., 261 F.2d 483, 489. We are not convinced that reception of this evidence constituted plain error affecting appellant's substantial rights.

Appellant also argues, however, that by reason of the asserted failure to connect the heroin contained in exhibit 1 with the activities of the informer, the Government has failed to prove the corpus delicti.

■■ Strictly speaking, appellant is not entitled to raise this point on appeal. At the close of the Government's case, counsel for appellant made a motion for a "directed verdict," on the ground that the evidence was insufficient. The trial court considered it a motion to acquit under Rule 29, Federal Rules of Criminal Procedure. The motion was denied. Thereafter, appellant took the witness stand and also presented an additional witness. No motion to acquit was made at the close of the case.

Under these circumstances, the contention that the evidence is insufficient may be deemed waived. Hardwick v. United States, 9 Cir., 296 F.2d 24, 26.

We nevertheless proceed to a consideration of the point. Agent Charles Fahey testified that on the evening of November 10, 1960, he obtained a package containing a white powder from Trezban and that at his office later in the evening he handed the package to Agent John Lee. Lee did not testify in person at the second trial, but his testimony given at the previous trial was read to the jury pursuant to stipulation.

According to this testimony, Lee received a white paper bindle from Fahey on the evening of November 10, 1960, after the two agents had returned to their office. Lee and Fahey weighed the white powdery substance contained in the bindle, the weight being 975 milligrams. The white substance was then put into an envelope which was sealed, and upon which Lee wrote.

Lee took the envelope to a back room in the offices and placed it in a steel chest. He locked the chest and retained the key in his possession. Four days later, on November 14, 1960, Lee delivered the envelope to a Mr. Crane, a United States chemist. At the first trial Lee identified an envelope produced at that time, offered as part of Government exhibit 1–A at that trial, as the same envelope he had handed Crane, his handwriting being upon it.

Crane was not called as a witness. Herman J. Meuron, a chemist for the United States Treasury Department, called as a witness at the second trial, testified that on November 14, 1960, he

---

1. At the time this evidence was received, the following colloquy occurred:

"Mr. Foley: I object to the introduction of the contraband in evidence, Your Honor, and I don't know whether you would care to argue it out of the presence of the jury.

"The Court: Do you want to argue it outside the jury's presence?

"Mr. Kaplan: What is your pleasure? I don't believe it requires any argument, Your Honor.

"The Court: The objection will be overruled. It will be admitted in evidence.

"If you want to argue it, I will give you an opportunity to argue it but I feel it is admissible. But if you want to argue it—

"Mr. Foley: That's all right, I will abide by Your Honor's ruling.

"The Court: However, I am willing to change it if you show me I am wrong.

"It will be admitted in evidence."

had taken an envelope from the laboratory safe and analyzed its contents. He found that the powder contained heroin and weighed 975 milligrams. Meuron did not remember who had brought the envelope to the laboratory.

There is no specific evidence explaining how the envelope got from Crane to the laboratory safe from which Meuron took it on November 14, 1960, or bearing on its undisturbed presence in that safe until Meuron removed it. However, since both Crane and Meuron were chemists employed by the United States, the jury were entitled to infer that both had access to the safe, that Crane placed the envelope in the safe, and that it remained there undisturbed until Meuron removed it later the same day.

Justification for such an inference finds support in two other circumstances. Lee and Fahey weighed the powder before they sealed it in the envelope, and found its weight to be 975 milligrams. Meuron weighed the powder contained in the envelope he took from the safe and found it to have the same weight. At the first trial Lee identified, as the envelope he had handed Crane, exhibit 1-A offered and received at that trial.

Appellant seeks to undermine the validity of such an inference by calling attention to an asserted conflict in testimony between Meuron and Lee. According to appellant, Meuron testified that the exhibit contained no identifying marks as to its origin, while Lee, testifying at the first trial, identified the exhibit by its markings in his own handwriting.

A close scrutiny of exhibit 1, together with a reading of the transcribed testimony, reveals no conflict between Lee's testimony and that given by Meuron.

Rather, it tends to confirm the inference that the envelope delivered by Lee to Crane and the envelope, the contents of which were analyzed by Meuron, were one and the same.

As we have indicated earlier Government exhibit 1, the admissibility of which is here contested, consists of two envelopes. The one, which has been opened, purports to have contained "975 mg of heroin contained in white paper bindle in substitute glassine container." In addition to other information concerning its once-purported contents, the envelope bears the following notations: "Date 11/10/60 Time 6:05 PM"; "Remarks: Evidence delivered to US Chemist by J. Lee." One other notation on the same envelope, accompanied by the written initials HJM, reads "Opened 14 Nov 60." The other envelope, which has not been opened, carries the following notation: "Heroin Hcl 925 mg Sealed 21 Nov 60 HJM."

When he made the identification at the first trial, Agent Lee did not refer to this exhibit as such. He referred only to the envelope upon which he had written, the envelope which has been opened.[2] Meuron, when he testified that the substance contained heroin, did not testify to the contents of exhibit 1 in general. He testified that the material in "that envelope" contained heroin and that the material had weighed 975 milligrams. He testified that he could not recall who had brought the material to the laboratory, and was asked whether there was any indication on the envelope as to who had brought it in. To this question he replied: "Not on this particular envelope."

Since Meuron testified about an envelope which contained material, he could only have referred to the sealed enve-

2. Agent Lee testified:
"A. Agent Fahey and myself then weighed the contents of the white paper bindle.
"Q. And what did you do with it after that?
"A. After it was weighed, we put it in an evidence envelope which you have there.

"Q. All right. I will show you Government's Exhibit 1-A for identification, an envelope, and ask you if you recognize this as the envelope in which you put the bindle and the contents you have just described.
"A. This first envelope is here. This is my handwriting."

lope, which contained no handwriting by Lee. And since Lee and Meuron were testifying about different parts of Government exhibit 1, there is no conflict in their testimony.

Appellant further argues that while Lee's testimony at the first trial, admitted by stipulation at the second trial identifies the envelope introduced in evidence at the first trial as the one he gave Crane, there was no such testimony with regard to the exhibit introduced at the second trial, since Lee did not testify as to the exhibit offered there.

Counsel for appellant stipulated that Lee's testimony given at the first trial, identifying the envelope offered in evidence at that trial, might be read at the second trial where a similar envelope was introduced.[3] This, itself, seems to be almost an admission that the exhibit introduced at the second trial was the same one Lee was talking about at the first trial. But whether or not an admission, the Lee evidence, received without objection as to its relevancy, entitled the jury to infer that the exhibit before them was the one concerning which Lee testified at the first trial.

Moreover, Meuron testified at the second trial that the substance he analyzed on November 14, 1960 was that which was contained in exhibit 1, introduced at the second trial. The jury, considering this testimony in the light of the presumption that court officials who had the exhibits of the first trial in their custody did their duty in safeguarding the exhibit, were entitled to find that exhibit 1 of the second trial was the same exhibit concerning which testimony was received at the first trial.

In our opinion there was not in this case such a failure to connect the heroin contained in exhibit 1 with the activities of the informer, as to warrant a holding that substantial evidence of the corpus delicti was lacking.

Under another specification of error appellant argues that the trial court erred in admitting, over objection, testimony of Lee given at the former trial relating to the arrest of Aaron Foster (who was not related to appellant but was a friend) on November 14, 1960.

Appellant points out that, at the former trial he was acquitted under count 2 of the indictment relating to the concealment of 100 milligrams of heroin at San Francisco on November 14, 1960. Accordingly, appellant argues, evidence with regard to the arrest of Aaron Foster on November 14, to prove that appellant concealed or facilitated the concealment of heroin on November 10, 1960, this being the subject matter of count 1, on which the conviction rests, was inadmissible.

At the second trial the Government read to the jury certain testimony which Lee gave at the first trial concerning the events of November 14, 1960. As to some of this testimony no objection was taken.[4] But when the Government began questioning Lee concerning the arrest of Aaron Foster on November 14, 1960, appellant repeatedly objected. He did so on the ground that the testimony related to another transaction having no connection with the alleged concealment or facilitation of concealment of one gram of heroin on November 10, 1960.

The objections were overruled and Lee was permitted to testify that another

3. After Lee's direct testimony at the first trial had been read to the jury at the second trial, counsel for appellant requested that Lee's cross examination at the first trial also be read. In the course of this cross examination Lee again testified that Fahey handed him a bindle of contraband on the evening of November 10.

4. There was no objection to Lee's testimony that he was able to identify, as appellant's, the voice he heard over a monitoring device on November 10, 1960, when he made physical contact with appellant for the first time on November 14, 1960. Nor was there objection to Lee's testimony that on November 14, 1960, while he and other officers were investigating a narcotics case, he saw the informer, Trezban, in the bus terminal at Treasure Island.

person, dressed in Navy dungarees, came out of the Treasure Island Naval Base on November 14, 1960, whom Lee recognized as Aaron; Lee and other officers thereupon arrested and searched Aaron and found on his person a cigarette package containing twelve paper bindles, another extra bindle, and $250 in United States currency; Lee took possession of these articles; Lee opened the bindles in the cigarette package and found them to contain a white and brown powdery substance weighing eighteen grams, 510 milligrams; he opened the additional bindle and found it to contain a mixture of brown and white powdery substance weighing 205 milligrams; $70 of the $250 in currency found on Aaron's person contained the same serial numbers which the officers had taken down on November 10, 1960, when Fahey gave that amount of money to Trezban.

In our opinion, the described testimony received over objection, considered together, was sufficiently related to the charged crime committed on November 10, 1960, so that it had relevance with regard to that charge. All of the persons connected with the transaction of November 10, 1960 were present on November 14, 1960, namely: Henry Craig Foster, Aaron Foster and Trezban. It was not until November 14, 1960 that appellant was arrested for the November 10, 1960 offense. Shortly after his arrest in his automobile while approaching the exit gate of Treasure Island Naval Base on that day, Aaron Foster was arrested. The modus operandi on the two occasions was essentially the same. The seventy dollars which officers had furnished to Trezban on November 10, 1960, and which he had with him when he went for a drive with appellant on that day, was found on Aaron's person on November 14, 1960.

The substance found on Aaron's person on November 14, 1960 was not the heroin appellant was charged with having concealed, or having facilitated the concealment of, in count 2 of the indictment. The heroin which appellant was charged with having concealed or facilitated the concealment of on November 14, 1960 consisted of a relatively small amount, approximately one hundred milligrams, which, according to the Government, Trezban had never touched and appellant had swallowed prior to his arrest.

We hold that the trial court did not err in receiving the described evidence concerning the arrest and search of Aaron Foster on November 14, 1960.

Under appellant's final specification of error [5] it is argued that the evidence does not support the verdict. It is argued under this point that where, as here, a case is based solely on circumstantial evidence the evidence must be such that every reasonable hypothesis except that of guilt is excluded.

For the reasons previously indicated, appellant has actually waived this contention. But in any event, it is without merit.

■ The question as to the sufficiency of either direct or circumstantial evidence is whether it is substantial, taking the view most favorable to the Government. Miller v. United States, 9 Cir., 302 F.2d 659, 660.

Some of our decisions have suggested a test to be applied by trial courts in passing on motions for judgment of acquittal, for the purpose of determining whether circumstantial evidence has enough substance to support the verdict.[6] In Remmer, for example, it was stated:

"The test to be applied on motion for judgment of acquittal * * *

---

5. In appellant's brief there is some discussion of the probative value of the admissions obtained from appellant on November 14, 1960, as testified to by Lee. But appellant does not seem to argue that such admissions were inadmissible. In our opinion they were admissible and had probative value.

6. See Bolen v. United States, 9 Cir., 303 F.2d 870, 874; Cape v. United States, 9 Cir., 283 F.2d 430, 433; Remmer v. United States, 9 Cir., 205 F.2d 277, 287; Stoppelli v. United States, 9 Cir., 183 F. 2d 391.

is not whether in the trial court's opinion the evidence fails to exclude every hypothesis but that of guilt, but rather whether *as a matter of law* reasonable minds, as triers of the fact, *must* be in agreement that reasonable hypothesis other than guilt could be drawn from the evidence. \* \* \* If reasonable minds *could* find that the evidence excludes every reasonable hypothesis but that of guilt, the question is one of fact and must be submitted to the jury."

However, in at least two decisions of this court, it has been said that, on review, this circuit applies no special rule to evaluate the substantiality of circumstantial evidence. Miller v. United States, 9 Cir., 302 F.2d 659, 660; Elwert v. United States, 9 Cir., 231 F.2d 928, 933.

Reviewing the record as a whole we are unable to say as a matter of law that this verdict is not supported by substantial evidence.

The judgment is affirmed.