Longino CASTRO, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18396.

United States Court of Appeals
Ninth Circuit.

Aug. 2, 1963.

William F. Gavin, San Diego, Cal.,
for appellant.

Francis C. Whelan, U. S. Atty.,
Thomas R. Sheridan, Asst. U. S. Atty.,
Chief, Criminal Section and Jo Ann
Dunne, Asst. U. S. Atty., Los Angeles,
Cal., for appellee.

Before JERTBERG and MERRILL,
Circuit Judges and WEIGEL, District
Judge.

WEIGEL, District Judge.

Appellant and one Nuel Arnold Melton
were charged in a two-count indictment
with violations of Section 174, Title 21
United States Code. The first count
charged a conspiracy to import heroin
into the United States and to conceal,
sell, transport and facilitate the con-
cealment, sale and transportation of
said narcotic drug, knowing the same
to have been illegally imported. The
second count charged the illegal im-
portation of heroin.

Before trial Melton had jumped bond
and disappeared. The trial court or-
dered severance, appellant acquiescing.
Having waived a jury, appellant was
tried by the court and convicted on both
counts.

■ He now appeals on the ground
that the evidence is insufficient to sus-
tain the conviction. We consider this
contention on its merits, although ap-
pellant failed to move for judgment of
acquittal at the close of the case in the
trial court. See Foster v. United States,
318 F.2d 684 (9th Cir., decided June
10, 1963).

■■ As to the conspiracy count, we
have concluded that the evidence is suf-

ficient, whether the test applied is that used in Foster v. United States, supra,[1] or that in Remmer v. United States, 205 F.2d 277 (9th Cir., 1953).[2] Since the sentence imposed upon appellant did not exceed that provided for conviction on the conspiracy count alone, we do not reach the question as to the sufficiency of the evidence to sustain the conviction on the second count of the indictment. White v. United States, 317 F.2d 231 (9th Cir., 1963); Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929).

We turn now to a review of the evidence.

Appellant, previously convicted for smuggling marijuana, first met Melton when the two were in prison.[3] Appellant was released from prison in January of 1959 and testified that he then went to live with his brother in San Leandro, California. There was conflicting testimony as to appellant's residence thereafter until July 18, 1959, the day Melton was apprehended in the attempt to smuggle heroin into the United States from Mexico. Appellant and witnesses called on his behalf testified that he was regularly resident at his brother's home in San Leandro. Next door neighbors of the Meltons, who lived in Costa Mesa, California, testified that appellant was regularly with the Meltons at their home for several months immediately preceding July 18. San Leandro, in northern California, is some four hundred miles distant from Costa Mesa, in southern California, approximately one hundred and twenty-five miles north of the Mexican border.

On July 18, 1959, Melton and his wife were stopped by government agents as they drove a 1949 or 1950 Studebaker two-door sedan from Mexico across the border to this country. The car was searched by the agents and a paper bag was found which contained over two pounds of heroin.[4] As will be seen, there was evidence connecting appellant with having prepared a hiding place in the car for attempted secretion of the heroin.

A compartment was located at each side of the back seat of this car. These compartments, which appeared to the trial judge to be standard equipment, were screwed to the floor and rested against the rear side panels of the car. The tops, which were hinged so as to allow them to be opened, were upholstered and could be used as armrests.

In the course of the search at the border, the agents removed the compartment at the left of the rear seat. The heroin was found there, lying between the compartment and the metal side of the car. The trial judge stated, after examining the car at the trial, that it looked as if some cardboard and upholstery material had been cut away from this area to make the recess in which the heroin was found.

A married couple who lived next door to the Melton's house in Costa Mesa

---

1. "The question as to the sufficiency of either direct or circumstantial evidence is whether it is substantial, taking the view most favorable to the Government." See also, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Rossetti v. United States, 315 F.2d 86 (9th Cir., 1963); Miller v. United States, 302 F.2d 659 (9th Cir., 1962); Bowler v. United States, 249 F.2d 806 (9th Cir., 1957); and Elwert v. United States, 231 F.2d 928 (9th Cir., 1956).

2. Indicating that the proper test is whether or not "reasonable minds could find that the evidence excludes every reasonable hypothesis but that of guilt * * *". 205 F.2d p. 288. See also, Bolen v. United States, 303 F.2d 870 (9th Cir., 1962); Cape v. United States, 283 F.2d 430 (9th Cir., 1960); and Stoppelli v. United States, 183 F.2d 391 (9th Cir., 1950). The two different approaches are discussed in an article at 69 Yale Law Journal 1149 (1959–60) and a note at 55 Columbia Law Review 549 (1955).

3. While not entirely clear from the record, their meeting appears to have occurred while appellant was serving his sentence on the conviction for smuggling marijuana. The record discloses no conviction of appellant for any other crime.

4. Marketable, according to the assistant United States Attorney who prosecuted, at from $350,000.00 to $500,000.00.

testified that on the afternoon of July 18, 1959, they observed appellant and Melton, in front of the latter's house, working on the Studebaker. They testified that Melton and appellant were working inside the car, at the left rear side, behind the driver's seat, that the rear seat had been removed from its usual position and was leaning against the rear seat back, one end on the floor, the other end at the rear window, that they saw tools lying about outside the car and that, when appellant and Melton finished working on the car, Melton and his wife drove off in it, leaving appellant behind.

Following the arrest of Melton at the border that same night, agents went with Mrs. Melton to the Melton home, at about 3:00 A.M. on July 19, 1959. Their testimony was that appellant was inside, talking on the telephone when they entered. He was then heard by one agent to say: "Here they come now." He turned and, seeing the agents, immediately hung up the phone.[5] He then told an agent that he was baby-sitting while the Meltons went to the market, but he testified that he was baby-sitting while they went to the doctor.

Neighbors testified that appellant lived with the Meltons from the middle of March, 1959. Appellant made conflicting statements about this. An agent testified that appellant told him on the morning of July 19 that he had just arrived that day in Costa Mesa for a visit, having flown down from San Leandro and taken a taxi from the airport. Later he changed his statement and said either that he had driven down or come

on the bus. Another agent testified that at the time of arrest on August 28, 1959, appellant stated that July 18 was the only time he had ever been at the Melton's home. Appellant testified that he lived in San Leandro during all this time, but that he had visited Melton in June as well as in July. He testified that he arrived by bus on the latter occasion.

The car registration was in the name of "A. Welton", with Melton's address thereon. It was found in the car. The certificate of ownership, or pink slip, was found in appellant's wallet. It had been endorsed in blank by the signature "A. Welton", which was, according to the testimony of a handwriting expert, written by Melton. Thus, the bearer, appellant, could have asserted ownership by signing it and sending it in to the Department of Motor Vehicles.

Appellant also gave conflicting stories as to the car. On July 19, he told an agent that he had borrowed the car from one "Joe" in a bar and that Joe had given him the endorsed pink slip because appellant was thinking of buying the car. He said that he then lent the car to another person whose name he did not know. When appellant was later arrested, he stated to the agent that on July 18, he had bought the car from a dealer, had parked it in front of the Melton house, had left the keys on a living room table and had presumed that Melton had taken the car.[6] However, next door neighbors testified that the car had been at Melton's home for several months before July 18 and that both appellant and Melton had been seen driving it frequently.

5. At the trial, appellant appears to have attached great significance to this testimony regarding the telephone call. While the agent was so testifying, appellant interrupted to declare the witness was lying. Later, while the trial court was summarizing the evidence, in advance of ruling on a motion to dismiss after the prosecution had rested and at the point in the summary when reference was made to the words attributed to appellant before hanging up the telephone, he interrupted the court by interjecting "That is not true." Yet later, the appellant's own testimony was to the effect that the phone had just rung before the agents came and that he had told the caller that the latter had reached a wrong number.

6. At the trial, appellant explained these statements by saying that he was afraid Melton was "up to some tricks with his automobile. I wanted to cover him."

In the light of all of the foregoing, we cannot sustain appellant's claim, so far as it relates to the conspiracy count, that the evidence was insufficient. The judgment is affirmed.