Bruce M. SIGMAN, Appellant

v.

UNITED STATES of America,
Appellee.

No. 18358.

United States Court of Appeals
Ninth Circuit.

July 24, 1963.

As Modified on Denial of Rehearing
Sept. 11, 1963.

Paul M. Stocker and Robert L. Butler,
Seattle, Wash., for appellant.

Brockman Adams, U. S. Atty., and
John S. Obenour, Asst. U. S. Atty., Ta-
coma, Wash., for appellee.

Before BARNES, HAMLIN and DUN-IWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Sigman was convicted of perjury, (18 U.S.C. § 1621) and he appeals. We conclude that the judgment must be affirmed. The pertinent portions of the statute are as follows:

> "Whoever, having taken an oath before a competent tribunal * * *, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, * * * truly, * * * willfully and contrary to such oath states * * * any material matter which he does not believe to be true, is guilty of perjury * * *."

Sigman was adjudicated an involuntary bankrupt in the District Court for the Western District of Washington, Southern Division, on May 26, 1960. Thereafter, pursuant to section 21, subdivision a. of the Bankruptcy Act (11 U.S.C. § 44, sub. a), and at a time while the bankruptcy proceeding was still pending, he was ordered by the referee to appear before him on July 18, 1961. The pertinent portions of section 21, sub. a. are:

> "The court may * * * by order require * * * the bankrupt * * * to appear before the court * * * to be examined concerning the acts, conduct or property of a bankrupt * * *."

He appeared at that hearing and was duly sworn, and questioned. He testified that in the latter part of 1960 he went into the automobile business in Salem, Oregon with twin brothers named Vanek, that the Vaneks owned the business, that he had his name on the business bank accounts only because the father of the Vaneks did not believe that they were old enough to sign checks individually, that his agreement with the Vaneks was that they were to pay him for teaching them the used car business and that they were to put up the money and he was to put up his ability and services, and that he put nothing else into the business. It was this testimony that was alleged to be perjurious.

At the trial on the perjury charge Sigman admitted the testimony and claimed that it was true. The government's principal witnesses were the two Vanek twins and their father. Each of them testified, in substance, that the Vaneks put into the business $5,000 that they borrowed from their father, that Sigman put $5,000 in the business (the two sons said that this was in cash in large bills), that when the business relationship was terminated six months later he was to receive his investment plus a share of the profits, a total of about $12,000. Sigman testified at the bankruptcy hearing that the Vaneks still owed him about $3,400. It also appeared both at the bankruptcy hearing and at the trial on the charge of perjury that Sigman had received from his business operations, prior to the bankruptcy, substantial sums which he converted into $100 bills and for which he was unable to account. The testimony indicates that the money that he put into the business venture with the Vaneks may have been a part of this cash which he did not turn over to the trustee in bankruptcy.

Sigman's principal contention is that there was a failure to prove that the false testimony that he gave at the bankruptcy hearing was "material" within the meaning of 18 U.S.C. § 1621. The parties are agreed that, although the question of what testimony Sigman gave at the bankruptcy hearing is one of fact, the materiality of that testimony is a question of law for the court. (See Sinclair v. United States, 1929, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692; Carroll v. United States, 2 Cir., 1927, 16 F.2d 951, 954; Luse v. United States, 9 Cir., 1931, 49 F.2d 241, 245; Travis v. United States, 10 Cir., 1941, 123 F.2d 268, 270; United States v. Alu, 2 Cir., 1957, 246 F.2d 29, 32.)

The trial court correctly held that the testimony was material within

the meaning of the perjury statute. As the Supreme Court said in Cameron v. United States, 1914, 231 U.S. 710, 34 S. Ct. 244, 58 L.Ed. 448, referring to § 21, sub. a. of the Bankruptcy Act:

> "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." (231 U.S. 717, 34 S.Ct. 246)

Another purpose is to develop facts and circumstances which bear upon the question of discharge. (Travis v. United States, supra, 271) The matters that were inquired into before the referee related directly to both of these purposes. They involved the possible concealment of property, to wit, cash, and its investment in the business venture with the Vaneks. They also related to the possibility of denying a discharge. See section 14, subdivision c of the Bankruptcy Act, and particularly subclauses (1), (2), (4) and (7), (11 U.S.C. § 32, sub. c).

■ Sigman suggests that a narrower test of materiality should be applied to testimony before a referee in bankruptcy than would be applied where the testimony is given before a court. However, for the purpose of conducting the section 21, sub. a. hearing, the referee was acting as an arm of the court (Bankruptcy Act, §§ 1(9), 38(2), (6), (7), 41(a); 11 U.S.C. §§ 1(9), 66(2), (6), (7), 69, sub. a). The same rules of evidence apply as to a hearing before a judge (see Langham, Langston & Burnett v. Blanchard, 5 Cir., 1957, 246 F.2d 529, 534). We find no merit in the point.

■ Sigman also urges that the prosecution did not meet the rigid standards of proof that apply in perjury cases, citing among others, our decisions in Hart v. United States, 9 Cir., 1942, 131 F.2d 59, 61, and Radomsky v. United States, 9 Cir., 1950, 180 F.2d 781. In the latter case we said that "there must be direct and positive evidence of the falsity of the statement under oath, and that circumstantial evidence of such falsity, no matter how persuasive, was insufficient." (180 F.2d at 782–783). (See, also, Umbriaco v. United States, 9 Cir., 1958, 258 F.2d 625, 626, 628) It is also the rule that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused. (Weiler v. United States, 1944, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495) We think that the proof in this case clearly meets the applicable standards. All three of the Vaneks testified that Sigman did put $5,000 in the business and had a one-half interest in it. The two sons testified that the $5,000 was in cash in the form of large bills. This testimony, if believed, was sufficient. There was also partial corroboration, as to Sigman's possession of cash, by another witness, one Bland. It is claimed that the Vaneks were impeached by various documents that they signed, such as signature cards at banks, a certificate of doing business under a fictitious name, and income tax returns in which they represented that they were the sole owners of the business, and that they had a motive to testify falsely because Sigman claimed that they owed him money. They testified that they signed these papers and made these representations at Sigman's request, and that he told them that his name could not appear anywhere as a co-owner of the business by reason of his bankruptcy. This evidence presented a question of credibility, and the jury resolved it in favor of the government. Once the required quantum of proof is met, the jury is as much the trier of fact in a perjury case as in any other case, and its decision on questions of credibility is final. (Weiler v. United States, supra; Adams v. United States, 9 Cir., 1951, 191 F.2d 206; Miranda v. United States, 9 Cir., 1952, 196 F.2d 408, 411)

Affirmed.