**Alfred G. SICA, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18011.**

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1963.

As Amended on Denial of Rehearing
Jan. 13, 1964.

Russell E. Parsons, Los Angeles, Cal., and G. Vernon Brumbaugh, Los Angeles, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section, and Robert E. Hinerfeld, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before JERTBERG and DUNIWAY, Circuit Judges, and FOLEY, District Judge.

DUNIWAY, Circuit Judge

■ Sica was adjudged guilty upon the verdict of a jury, of a violation of 18 U.S.C. § 1001 and he appeals.[1] The charge was that:

"On or about the 13th day of November, 1958, * * * [he] *did* wilfully and knowingly falsify, conceal, and cover up a material fact and make a false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Internal Revenue Service of the Treasury Department, a department and agency of the United States, in that he stated to said department and agency that:

" 'Since Mr. Michael Cohen was released from prison on October 9, 1955, I have been a personal friend of Mr. Cohen and associated with him in a purely social manner.

" 'Since January 1, 1955, I have not received any moneys from Mr. Cohen; nor have I paid any moneys to Mr. Cohen. During the period January 1, 1955, to date, I have not received any moneys from anyone acting on Mr. Cohen's behalf; nor have I paid any moneys to anyone on Mr. Cohen's behalf.

" 'During the period January 1, 1955, to date, I have had no business connections or negotiations with Mr. Cohen, directly or indirectly. * *

" 'During the period January 1, 1955, to date, I have made no substantial gifts to Mr. Cohen; nor has Mr. Cohen made any gifts to me, other than a wrist watch as a birthday gift in September 1957.

" 'During the period January 1, 1955, to date, I have made no loans to Mr. Cohen; nor did he make loans to me.

" 'During the period January 1, 1955, to date, I have participated in no financial transactions to which Mr. Cohen also was a party.' "

Sica was represented at the trial by experienced counsel of his own choice and is represented by the same counsel on ap-

---

1. The notice, which is entitled "notice of appeal," is complete in all respects, except that it does not expressly state that Sica appeals. No question of its sufficiency is raised by appellee. It was sufficient.

See Poe v. Gladden, 9 Cir., 1961, 287 F. 2d 249, 251; Yanow v. Weyerhaeuser Steamship Co., 9 Cir., 1959, 274 F.2d 274, 282–83.

peal. Two contentions are made: first, that the evidence was insufficient to sustain the verdict, and second, that there was error in receiving in evidence a letter, Exhibit 10, and three checks, Exhibits 11, 12, and 13. We conclude that the evidence is sufficient and that there was no error or prejudice in receiving the exhibits in question.

The statements quoted above from the indictment were made by Sica in an affidavit. The record shows, largely by stipulation, that the Intelligence Division of the Internal Revenue Service of the Treasury Department was investigating the income tax liability of one Michael Cohen; that agents of the Service met with Sica; that they informed him that they were conducting an investigation into Cohen's tax liability and financial status; that they wanted an affidavit from Sica covering the financial transactions and anything he knew about it; that they questioned him, and agent Crabtree took notes; that Crabtree then prepared the affidavit which was submitted to Sica, who checked it with his attorney and then told the agents that his attorney had "okehed" his signing the affidavit; that he then did so and delivered it to the agents.

Counsel objected that the facts stated in the affidavit were not "material" within the meaning of 18 U.S.C. § 1001.[2] They agreed, however, that, to quote one of them, the materiality was "a matter for the court to determine." The court overruled the objection.

The foregoing facts had been presented to the court in the absence of the jury. When government counsel offered evidence to prove them, the court replied in part: "I don't think we need to call them [the witnesses] in view of the stipulation. That is a matter on which the court will instruct the jury." Defense counsel made no objection. The court, in instructing the jury, stated to them: "Materiality is a question for the court, and I charge you as a matter of law that the statements alleged in Count Two of the Indictment were pertinent to the issue pending within the jurisdiction of the Internal Revenue Service." When the jury had been fully instructed, the court asked counsel to approach the bench, at which time the following statements were made:

"MR. SHERIDAN: The government has no exceptions.

"MR. PARSONS: We have none, Your Honor."

The government sought to show, entirely by circumstantial evidence, that Sica had been associated with Cohen in a business way rather than in a purely social manner, and that, directly or indirectly, he had received moneys from Cohen or from persons acting on Cohen's behalf, and that he had had business connections with Cohen.

Various witnesses testified to the following facts: In November of 1957, there existed in Los Angeles what the witnesses described as "a competitive situation" between Coast Cigarette Service and Rowe Cigarette Service. Both companies were attempting to obtain locations for their automatic cigarette vending machines and were paying push money in the form of "bonuses" and "advances." One Breen, a salesman for Coast, was approached by Sica who said that he could get some locations for Coast and that he thought his services would be worth $25,000 to Coast. One Carr, manager of Coast, testified that men from Coast's parent company had come from outside the Los Angeles area to help Coast in the competition. Carr had also retained a private investigator named Otash.

2. "§ 1001. Statements or entries generally. Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

A witness named Harry Rudolph, better known as Babe McCoy, who was once Cohen's manager when the latter was a boxer, met in New Orleans with Vaughn and Angelo, employed by a company affiliated with Rowe. Vaughn and Angelo then came to Los Angeles and McCoy arranged for them to meet in his apartment with Cohen and Sica. Vaughn was dead at the time of the trial, but Angelo testified that the trip to Los Angeles was in connection with the competitive situation between Rowe and Coast and that Angelo worked in Los Angeles under the direction of one Seedman, president of Rowe, as a salesman attempting to obtain locations for Rowe. It was stated at the meeting that Coast was trying to get Cohen to help Coast against Rowe and that Vaughn, although not interested in employing Cohen, was interested in having Cohen remain neutral and not hurt Rowe in any way. So far as appears, although Sica was present during the entire discussion, he said nothing. That same evening, Angelo, Cohen, Sica and Vaughn had dinner together, and Angelo saw Cohen and Sica subsequently several times, about five.

Seedman testified that he was instrumental in persuading Vaughn to come to Los Angeles. On November 27, 1957, he drew a check on his company's account, payable to himself, in the sum of $5,000. He cashed it at a bank, receiving $100 bills. He put the money in a plain envelope and handed it to Vaughn. The two then proceeded to a restaurant where they met Sica. Later Cohen arrived. Vaughn handed the envelope containing the money to Cohen. Cohen said that it "should be Fred's," or words to that effect ("Fred" meant Sica). The envelope was passed to Sica.

Otash, who had been employed by Carr as a private investigator for Coast, testified that his work related to the location of cigarette vending machines and that in connection with this work he made certain recordings which he played for Seedman and Cohen. Sica was not present when this occurred. Later Vaughn, who, as we have seen, worked for Rowe, handed Cohen five $100 bills which Cohen handed to Otash. This was also at a restaurant and Sica was in the restaurant, but not at the table.

Vaughn returned to Los Angeles in December, and Seedman saw Cohen and Sica at Vaughn's room. Later, Seedman reimbursed Vaughn for the expenses incurred by Vaughn on his trip to Los Angeles in the sum of $3,558.53. This was pursuant to a statement contained in a letter from Vaughn to Seedman which is Exhibit 10, about which appellant now complains. Exhibit 11 is the check that Seedman gave Vaughn. Seedman also drew a check on his company payable to himself in the sum of $3,000. This is Exhibit 12. He then drew a check on his own bank account in the same amount and gave it to Vaughn. This is Exhibit 13. These two checks, according to Seedman, were made in response to Exhibit 10 which refers to "$3,000 advanced to M.C." Seedman also identified another Rowe check for $500 payable to Vaughn as having been given to Vaughn in connection with the Otash transaction. One Gritz, an attorney, testified that he obtained from Vaughn $3,000 which he delivered to Cohen; Cohen testified that he received $3,000 from Vaughn.

■ In summing up the testimony in a memorandum prepared at the time when it denied Sica's motion for judgment of acquittal and motion for a new trial, the trial court remarked that some of the witnesses were obviously reluctant, and concluded that the evidence shows that Sica did participate in financial transactions to which Cohen was also a party and did associate with Cohen in other than a purely social manner. We agree with the trial court that the most telling evidence is the payment of $5,000 to Sica by Seedman, or by Vaughn, through or upon the instructions of Cohen. The trial court also stated: "The court and jury would be naive indeed to conclude that the defendant's participation in these various meetings was in 'a purely social manner.' " We agree. We are satisfied that, viewing the evidence in

the light most favorable to the government,[3] the verdict is supported.

■ There is no merit in the argument that, because Sica was also indicted in another count for violating 26 U.S.C. § 7201 by willfully filing a false income tax return, in failing to report as income the $5,000 received from Seedman through Vaughn or Cohen, and was acquitted, the jury must have found that he did not receive the $5,000, so that the evidence relating to that money must be disregarded. The jury could also have found that he did receive the money, but believed that it was not taxable. (See Cape v. United States, 9 Cir., 1960, 283 F.2d 430, 436)

■ The record makes it clear that Sica's counsel agreed with the position of government counsel, namely that the question as to whether the statements contained in the affidavit were material within the meaning of section 1001 is a question of law for the court.[4] Assuming, in spite of the fact that no objection was made to the instructions to the jury (see Rule 30, F.R.Crim.Proc.), that the question is properly before us, we hold that the contents of the affidavit were material within the meaning of section 1001.[5]

■ There was neither error nor prejudice in admitting Exhibits 10, 11, 12, and 13. They were objected to as hearsay and the court heard considerable argument, not all of which is reported in the transcript, before overruling the objection. In its memorandum on denial of Sica's motion for judgment of acquittal and for a new trial, the trial court said:

"Where, however, it is relevant and material to a case that a statement was in fact made or that a conversation or discussion had in fact been held and no effort is made to use the statement or conversation as proof of the truth of the matter asserted, such evidence is not barred by the rule excluding hearsay evidence."

In other words, the court was of the view, which we think is correct, that Exhibit 10, a letter from Vaughn to Seedman, detailing his expenses and asking for reimbursement, was admissible, not as proof of the truth of the statements made, but as further evidence that Vaughn and Seedman's relationships, which, as shown by other evidence, also included Cohen and Sica, were of a business character.[6] The checks, Exhibits 11, 12, and 13, were identified by Seedman as having been drawn in response to Exhibit 10, and the testimony of attorney Gritz, corroborated by checks, Exhibits 6 and 7, shows that the $3,000 involved was in fact paid by Vaughn to Cohen. None of this evidence purports to show or could be taken by any intelligent juror as showing that any of the particular moneys referred to went to Sica. It was simply a part of the circumstantial evidence showing that the dealings between Vaughn, Angelo, Seed-

3. See Castro v. United States, 9 Cir., 1963, 323 F.2d 683, and cases there cited in footnotes 1 and 2.

4. This position is legally correct. See Sinclair v. United States, 1929, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692; Sigman v. United States, 9 Cir., 1963, 320 F.2d 176 and cases there cited; Weinstock v. United States, 1956, 97 U.S.App.D.C. 365, 231 F.2d 699, 703.

5. Judge Prettyman says that the "[t]est is whether the false statement has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." (Weinstock v. United States, supra, 231 F.2d at 701–702).

Here, the "tribunal" is the Intelligence Division of the Internal Revenue Service, and the "determination" would be as to further investigation and the direction it might take. If Sica had told the truth, that would have had a natural tendency to influence the "tribunal" in making its "determination"; the deception would likewise have such a tendency. See also Neely v. United States, 9 Cir., 1962, 300 F.2d 67, 71–72; Brandow v. United States, 9 Cir., 1959, 268 F.2d 559, 564–565; Pitts v. United States, 9 Cir., 1959, 263 F.2d 353; Cohen v. United States, 9 Cir., 1953, 201 F.2d 386, 392.

6. See Busby v. United States, 9 Cir., 1961, 296 F.2d 328, 332.

man and Cohen, in which Sica was shown by other evidence to have participated, was of a business and not a social character.

■ Under these circumstances, it was not error to admit the evidence. If evidence, otherwise hearsay, falls within any exception to the hearsay rule, it is admissible. This follows from Wigmore's basic principle that "all facts having rational probative value are admissible, unless some specific rule forbids." (I Wigmore, Evidence, 3d ed. 1940, § 10, p. 293). Moreover, this evidence was not within the hearsay rule at all. "The Hearsay rule forbids merely the use of an extra judicial utterance as an assertion to evidence the fact asserted. * * If, then, an utterance can be used as circumstantial evidence, i. e. without inferring from it as an assertion to the facts asserted * * *, the Hearsay rule does not oppose any barrier, because it is not applicable." (Ibid, vol. VI, § 1788, p. 234.)

■ It would have been proper for Sica's counsel to ask the court to instruct the jury as to the purpose for which these documents were deemed admissible and to caution them that Exhibit 10 was not evidence of the truth of the statements that it contained. The court, however, was not obliged to give such an instruction unless asked to do so. The law wisely places upon counsel the duty to request it. For all that we know, Sica's counsel, who are experienced attorneys, may well have felt that such an instruction would tend to over-emphasize the importance of Exhibit 10 in the eyes of the jury, and may have elected not to ask for the instruction for that reason. Under these circumstances there is no affirmative obligation on the trial judge in a criminal case to give such a limiting instruction when counsel does not ask for it.[7]

■■ It is not an answer to the foregoing to say that the trial court did not indicate to counsel why he was admitting the exhibits over the objection that they were hearsay. The trial court is not required to explain each of its rulings to counsel. Counsel, too, are supposed to know the law applicable to the case they are trying. We do not presume error; we require the appellant to demonstrate it. The record indicates that there was more than one unreported argument about the matter, and we would be going a long way to presume that in the course of this discussion the reasons why these documents should be admitted were not stated by government counsel and by the trial court.[8]

Furthermore, even if we are in error as to the admissibility of the documents and as to the duty of counsel to request a limiting instruction, we can find no prejudice. Seedman testified as to the making of the payments referred to in the letter and could have done so if the letter had not been offered in evidence. Gritz and Cohen both testified as to Vaughn's payment to Cohen. The letter was thus purely cumulative and under the circumstances we cannot find that its admission, even assuming that it was erroneous, was prejudicial.[9] We need not decide whether, as the government tenta-

7. Stevens v. United States, 9· Cir., 1958, 256 F.2d 619, 623. See also United States v. Smith, 2 Cir., 1960, 283 F.2d 760. Compare: Donaldson v. United States, 9 Cir., 1957, 248 F.2d 364; United States v. Herskovitz, 2 Cir., 1954, 209 F.2d 881; Malatkofski v. United States, 1 Cir., 1950, 179 F.2d 905. We have applied the same rule in a civil case, J. E. Riley Investment Co. v. Sakow, 9 Cir., 1940, 110 F.2d 345.

8. The case of Brown v. United States, 9 Cir., 1963, 314 F.2d 293, cited in the dissenting opinion, is not pertinent here. No claim of error is made in reliance upon 28 U.S.C. § 753(b), as was claimed in Brown. The record here does not, on its face, show error, as the dissent asserts, because the documents were admissible.

9. Cf. Bailey v. United States, 9 Cir., 1960, 282 F.2d 421, 426; Stevens v. United States, supra, note 8, 256 F.2d at 625; Papadakis v. United States, 9 Cir., 1953, 208 F.2d 945, 952; Haid v. United States, 9 Cir., 1946, 157 F.2d 630, 632–633.

tively suggests, Vaughn being dead, the letter could have been admitted under the principles discussed by us in LaPorte v. United States, 9 Cir., 1962, 300 F.2d 878, 882 n. 20.

Affirmed.

FOLEY, Senior District Judge (dissenting).

One of the questions presented by the appeal was, "Were Exhibits 10, 11, 12, and 13 properly admitted over the objection of hearsay?" In support of their position the majority states:

"There was neither error nor prejudice in admitting Exhibits 10, 11, 12, and 13. They were objected to as hearsay and the court heard considerable argument, not all of which is reported in the transcript, before overruling the objection. In its memorandum on denial of Sica's motion for judgment of acquittal and for a new trial, the trial court said:

" 'Where, however, it is relevant and material to a case that a statement was in fact made or that a conversation or discussion had in fact been held and no effort is made to use the statement or conversation as proof of the truth of the matter asserted, such evidence is not barred by the rule excluding hearsay evidence.' "

After a discussion as to the views of the Trial Court in admitting Exhibit 10, the majority's opinion continues:

"It would have been proper for Sica's counsel to ask the court to instruct the jury as to the purpose for which these documents were deemed admissible and to caution them that Exhibit 10 was not evidence of the truth of the statements that it contained. The court, however, was not obliged to give such an instruction unless asked to do so. The law wisely places upon counsel the duty to request it."

Then the Court's opinion goes on to say:

"It is not an answer to the foregoing to say that the trial court did not indicate to counsel why he was admitting the exhibits over the objection that they were hearsay. The trial court is not required to explain each of its rulings to counsel. Counsel, too, are supposed to know the law applicable to the case they are trying. We do not presume error; we require the appellant to demonstrate it. The record indicates that there was more than one unreported argument about the matter, and we would be going a long way to presume that in the course of this discussion the reasons why these documents should be admitted were not stated by government counsel and by the trial court."

The record does not disclose that defendant or his counsel were at any time informed during the course of the trial that Exhibit 10 was to be admitted for the purpose only of establishing that Vaughn's statements were made, and not for the purpose of determining whether or not the statements, or any of them, were true or false; and counsel were not informed that Exhibits 11, 12, and 13 were admitted for a limited purpose, or purposes, only. Therefore counsel had no occasion to request the Court to instruct the jury that the admission of any of the Exhibits 10, 11, 12, and 13 was for limited purposes. Counsel cannot be said to have waived the point by failure to so request.

The majority contends that:

"Furthermore, even if we are in error as to the admissibility of the documents and as to the duty of counsel to request a limiting instruction, we can find no prejudice."

The question of whether there was prejudice cannot be so lightly disposed of.

In Kotteakos v. United States, 328 U.S. 750, 761, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557, Mr. Justice Rutledge, speaking for the Supreme Court, had the following to say:

"The 'hearsay' rule is often grossly artificial. Again in a different

context it may be the very essence of justice, keeping out gossip, rumor, unfounded report, second, third, or further hand stories."

Then on p. 762 of 328 U.S., on pp. 1246–1247 of 66 S.Ct., 90 L.Ed. 1557:

"The statute in terms makes no distinction between civil and criminal causes. [Sec. 269 of the Judicial Code, as amended (28 U.S.C. § 391)—now 28 U.S.C.Civ.Proc.R. 59, 61; 18 U.S.C.Cr.Proc.R. 33, 52]. But this does not mean that the same criteria shall always be applied regardless of this difference. * * * Nor does § 269 mean that an error in receiving or excluding evidence has identical effects, for purposes of applying its policy, regardless of whether the evidence in other respects is evenly balanced or one-sided. Errors of this sort in criminal causes conceivably may be altogether harmless in the face of other clear evidence, although the same error might turn scales otherwise level, as constantly appears in the application of the policy of § 269 to questions of the admission of cumulative evidence. So it is with errors in instructions to the jury. Cf. United States v. Socony-Vacuum Oil Co., supra, [310 U.S. 150] at 239, 241 [60 S.Ct. 811, 84 L.Ed. 1129].

"Some aids to right judgment may be stated more safely in negative than in affirmative form. Thus, it is not the appellate court's function to determine guilt or innocence. Weiler v. United States, supra [323 U.S. 606], at 611 [65 S.Ct. 548, 89 L.Ed. 495]; Bollenbach v. United States, 326 U.S. 607, 613–614 [66 S. Ct. 402, 90 L.Ed. 350]. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out. Appellate judges cannot escape such impressions. But they may not make them sole criteria for reversal or affirmance. Those judgments are exclusively for the jury, given always the necessary minimum evidence legally sufficient to sustain the conviction unaffected by the error. Weiler v. United States, supra; Bollenbach v. United States, supra.

"But this does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. Cf. United States v. Socony-Vacuum Oil Co., supra [310 U.S.], at 239, 242 [60 S.Ct. at 851, 853, 84 L.Ed. 1129.] In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. IT IS RATHER WHAT EFFECT THE ERROR HAD OR REASONABLY MAY BE TAKEN TO HAVE HAD UPON THE JURY'S DECISION. THE CRUCIAL THING IS THE IMPACT OF THE THING DONE WRONG ON THE MINDS OF OTHER MEN, NOT ON ONE'S OWN, IN THE TOTAL SETTING. Cf. United States v. Socony-Vacuum Oil Co., supra [310 U.S.], at 239, 242 [60 S.Ct. at 851, 853, 84 L.Ed. 1129]; Bollenbach v. United States, supra [326 U.S.] 614 [66 S.Ct. 406, 90 L.Ed. 350]. [Emphasis added.]

"THIS MUST TAKE ACCOUNT OF WHAT THE ERROR MEANT TO THEM, NOT SINGLED OUT AND STANDING ALONE, BUT IN RELATION TO ALL ELSE THAT HAPPENED. AND ONE MUST JUDGE OTHERS' REACTIONS NOT BY HIS OWN, BUT WITH ALLOWANCE FOR HOW OTHERS MIGHT REACT AND NOT BE REGARDED GENERALLY AS ACTING WITHOUT REASON. THIS IS THE IMPORTANT DIFFERENCE, BUT ONE EASY TO IGNORE WHEN THE SENSE

OF GUILT COMES STRONGLY FROM THE RECORD." [Emphasis added.]

As stated by the Trial Judge during the course of the trial (Rep.Tr. 167), this is a very close case, and it cannot be assumed that the statements contained in any of the Exhibits 10 to 13, inclusive, did not have substantial influence upon the jury in arriving at a verdict of guilty. The jury was not informed during the course of the trial, or by means of an instruction, that any of the Exhibits 10 to 13, inclusive, were admitted for limited purposes. It is therefore impossible for this Court to say to what extent any of these exhibits influenced the jury in returning its verdict of guilty; and we have no way of knowing to what extent, if at all, the jury's belief or disbelief in the truth of any of the statements contained in any of said exhibits influenced its verdict.

We cannot assume that the Trial Court, in the course of unreported discussions between Court and counsel, informed defendant and counsel that any of the Exhibits 10 to 13. inclusive, were admitted for a limited purpose, or purposes, only, and not for the purpose of determining whether or not the statements, or any of them, contained in any or all of said exhibits were true or false.

True, we cannot presume error. Likewise, in the absence of a record showing that the Trial Court, in overruling the hearsay objection, admitted any of these exhibits for some limited purpose, or purposes, we cannot assume that in any unrecorded statements of the Judge he informed counsel that he was admitting these exhibits, or any of them, for a limited purpose, or purposes.

The recorded proceedings on their face show error, viz., the admission of hearsay evidence over the general objection that they were hearsay. The absence in the record of anything showing that the Court admitted any of these exhibits for limited purposes results in the record as it now stands disclosing error. The objection here was a general one, viz., that the exhibits were hearsay or contained hearsay matter. Cf. Brown v. United States, 9 Cir., 314 F.2d 293 (1963). In that case the record did not, on its face, show error. There the Court remanded for a hearing by the Trial Court to determine whether or not in the unreported argument of counsel error was committed.

All proceedings in criminal cases must be recorded verbatim by shorthand or by mechanical means. 28 U.S.C.A. § 753(b). In Brown v. United States, supra, 314 F.2d at p. 295, failure to record closing arguments of counsel in violation of statutory command did not require reversal and new trial but merely vacation of judgment and remand for hearing to determine whether defendant was prejudiced by failure to record, where defendant had suggested no error that may have occurred in prosecutor's summation. In a footnote 314 F.2d on p. 295, this Court stated:

"Appellant's argument would be without merit if presented in a collateral attack upon his conviction. Although the requirement of Section 753(b) (1) that 'all' proceedings in open court in criminal cases be recorded is mandatory (Stephens v. United States, 289 F.2d 308, 309 (5th Cir., 1961)), we would think failure to record counsel's summation, without more, though error, 'is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure' (Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)), and failure to record counsel's summation therefore would not, of itself, require the granting of collateral relief. However, if a denial of appellant's rights in some other respect were alleged, the absence of a record might be a significant factor in determining whether in all the circumstances there had been a denial of fundamental fairness. United

States v. Taylor, 303 F.2d 165, 169 (4th Cir., 1962)."

In the Brown case it was not alleged that there was error or impropriety in the argument of counsel and that therefore, failure to record counsel's summation would not of itself require the granting of a reversal. Here it is obvious that hearsay evidence was erroneously admitted and that the record fails to show that the admission of this hearsay was for any limited purpose.

As pointed out by Mr. Justice Rutledge in Kotteakos v. United States, supra (328 U.S. at 764, 66 S.Ct. at 1247–1248, 90 L.Ed. 1557), we cannot say that:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, supra [308 U.S. 287], at 294 [60 S.Ct. 198, 84 L.Ed. 257]. BUT IF ONE CANNOT SAY, WITH FAIR ASSURANCE, AFTER PONDERING ALL THAT HAPPENED WITHOUT STRIPPING THE ERRONEOUS ACTION FROM THE WHOLE, THAT THE JUDGMENT WAS NOT SUBSTANTIALLY SWAYED BY THE ERROR, IT IS IMPOSSIBLE TO CONCLUDE THAT SUBSTANTIAL RIGHTS WERE NOT AFFECTED. THE INQUIRY CANNOT BE MERELY WHETHER THERE WAS ENOUGH TO SUPPORT THE RESULT, APART FROM THE PHASE AFFECTED BY THE ERROR. IT IS RATHER, EVEN SO, WHETHER THE ERROR ITSELF HAD SUBSTANTIAL INFLUENCE. IF SO, OR IF ONE IS LEFT IN GRAVE DOUBT, THE CONVICTION CANNOT STAND." [Emphasis added.]

As said in that case, the crucial thing is the impact of any of these exhibits on the minds of the jurors. In the absence of a limiting instruction, it is likely, and it would be natural for a juror to consider whether the statements contained in Exhibit 10 were true or false. All that appears in the record is that the objection on the ground of hearsay was overruled. Under the circumstances here, counsel was not obliged nor was it counsel's duty to ask the Court for a limiting instruction.

The Government suggests that Exhibits 11, 12, and 13 were without the ambit of the hearsay rule and were business records. 28 U.S.C.A. § 1732. Palmer v. Hoffman, 318 U.S. 109, 111–114, 63 S.Ct. 477, 87 L.Ed. 645, is to the contrary.

This conviction should not stand. I would reverse.