## FRISBY *v.* UNITED STATES.

CONSTITUTIONAL LAW; EX POST FACTO LAWS; FORGERY; IMMUNITY STATUTES.

1. A statute is *ex post facto* within the meaning of article 1, sec. 9, cl. 3, of the Federal Constitution, which by its necessary operation and in relation to the offense or its consequences, alters the situation of the accused to his disadvantage.

2. The inhibition of the Federal Constitution against *ex post facto* laws does not extend to statutes affecting mere matters of procedure,— that is, statutes which do nothing more than admit evidence of a particular kind upon an issue of fact arising in the trial of a criminal case, which was not admissible when the crime was committed, and which does not create a new issue in the case; but no substantial right which the law gives the defendant at the time to which his guilt relates can be taken away from him by *ex post facto* legislation, by calling it a law of procedure.

3. The making of a false instrument with intent to defraud is forgery; and the uttering of a forged instrument with intent to defraud is forgery; but where the instrument is both forged and uttered by the same person, there is only the single crime of forgery committed.

4. Intent in forgery will not be presumed from the mere making of a false instrument; but it must be gathered from some affirmative act or from the existence of circumstances from which criminal intent may be inferred.

5. An indictment for the forgery of an instrument attached by the accused as an exhibit to his answer in an equity suit in which he was the defendant, and in which he testified as a witness, will not lie where, at the time such instrument was exhibited, and at the time he testified as a witness, sec. 860, Rev. Stat., U. S. Comp. Stat. 1901, p. 661, was in force, which provided that no pleading and no discovery of evidence obtained from a party or witness by means of a judicial proceeding, could be given in evidence or used against him in any criminal proceeding, except for perjury, although before the in-

dictment was found the statute was repealed. (Citing *Frisby* v. *United States*, 35 App. D. C. 513.) Mr. Chief Justice Shepard dissenting.

No. 2332.   Submitted October 10, 1911.   Decided January 2, 1912.

HEARING on an appeal by the accused from a judgment of conviction of the Supreme Court of the District of Columbia, in a criminal prosecution for forgery.                    *Reversed.*

The facts are stated in the opinion.

*Mr. Henry E. Davis* for the appellant.

*Mr. Clarence R. Wilson,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The appellant, Perri W. Frisby, hereafter for convenience referred to as defendant, was indicted in the supreme court of the District of Columbia for the forgery of a certain written instrument purporting to be a contract for the sale of real estate. This paper was originally produced by defendant as an exhibit to his answer in a suit in equity, in which cause he also testified as a witness in his own behalf. It was after the alleged forged instrument had been exhibited in the equity pleading and defendant had testified in said cause that he was indicted for forging the instrument.

At the time the instrument was filed, sec. 860, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 661, was in force in this District. It was as follows: "No pleading of a party, nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country, shall be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or

forfeiture: Provided, that this section shall not exempt any party or witness from prosecution and punishment for perjury committed in discovering and testifying as aforesaid." Between the finding of the indictment and the conviction of defendant, this statute was repealed. 36 Stat. at L. 352, chap. 216.

On trial the contract, as it appeared in the equity cause, together with certain portions of defendant's evidence in that proceeding, was admitted in evidence against the accused over the objection and exception of his counsel, who contended that defendant could not be deprived of the immunity granted by sec. 860, supra, and that the repealing act was, as to him *ex post facto* legislation, and therefore void. This is the sole question presented on this appeal.

It is not always an easy task to determine just when a statute is *ex post facto* in its application to a given case. The provision of the Federal Constitution forbidding the enactment of *ex post facto* laws (art. I, sec. 9, cl. 3), has called forth a vast volume of opinion by the Federal and state courts. In the early case of *Calder* v. *Bull*, 3 Dall. 386, 1 L. ed. 648, the court defined an *ex post facto* law as follows: "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was when commited. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive."

It will be observed from the above definition that a law to be *ex post facto* must be one that deprives the person accused of crime of a substantial right in which he was protected and granted immunity by the law in force at the time of the commission of the offense. In other words, any statute is held to be *ex post facto* "which by its necessary operation and in rela-

tion to the offense or its consequences alters the situation of the accused to his disadvantage." However, it has generally been held that the constitutional inhibition does not extend to enactments affecting mere matters of procedure. Public policy, it is said, demands that remedies shall always be under the control of the legislature. This is true where a statute does nothing more than to admit evidence of a particular kind upon an issue of fact arising in the trial of a criminal case, which was not admissible when the crime was committed, and which does not create a new issue in the case. In such a case it merely adds to the quantum of evidence to prove the facts existing and subject to proof when the crime was committed. Within these limits the accused is held not to be deprived of a substantial right or immunity such as is contemplated in the prohibitive clause of the Constitution.

It is well settled, however, that the general rule that laws regulating mere matters of procedure are not *ex post facto* is subject to numerous exceptions. The word "procedure," as a legal term, has a most indefinite meaning. The leading law dictionaries do not attempt to define it. Bishop in his work on Criminal Procedure, sec. 2, says: "The term 'procedure' is so broad in its signification that it is seldom employed in our books as a term of art. It includes in its meaning whatever is embraced by the three technical terms, pleading, evidence, and practice." The same author defines "practice" as meaning "those legal rules which direct the course of proceeding to bring parties into court, and the course of the court after they are brought in." In *Kring* v. *Missouri,* 107 U. S. 221, 27 L. ed. 506, 2 Sup. Ct. Rep. 443, Mr. Justice Miller, referring to the above definition of procedure, said: "If this be a just idea of what is intended by the word 'procedure' as applied to a criminal case, it is obvious that a law which is one of procedure may be obnoxious as an *ex post facto* law, both by the decision in *Calder* v. *Bull,* 3 Dall. 386, 1 L. ed. 648, and in *Cummings* v. *Missouri,* 4 Wall. 277, 18 L. ed. 356; for in the former case this court held that 'any law which alters the legal rules of evidence, and receives less or different testimony

than the law requires at the time of the commission of the offense, in order to convict the offender,' is an *ex post facto* law; and in the latter, one of the reasons why the law was held to be *ex post facto* was that it changed the rule of evidence under which the party was punished. But it cannot be sustained without destroying the value of the constitutional provision, that a law, however it may invade or modify the rights of a party charged with crime, is not an *ex post facto* law, if it comes within either of these comprehensive branches of the law designated as pleading, practice, and evidence. Can the law with regard to bail, to indictments, to grand juries, to the trial jury, all be changed to the disadvantage of the prisoner by State legislation after the offense was committed, and such legislation not held to be *ex post facto* because it relates to procedure, as it does according to Mr. Bishop? And can any substantial right which the law gave the defendant at the time to which his guilt relates be taken away from him by *ex post facto* legislation, because, in the use of a modern phrase, it is called a law of procedure? We think it cannot."

Even conceding that the changes wrought in the status of the defendant by the repealing statute relate alone to procedure, that is not of itself sufficient to warrant an affirmance of the judgment, if it appears that he has been deprived of a substantial right which amounted to an immunity at the time the offense was committed.

With these general rules and their exceptions before us, what is the situation of this defendant? "Forgery, at the common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability." 2 Bishop, Crim. Law, sec. 523. To constitute the crime of forgery three things must exist: "There must be a false making or other alteration of some instrument in writing; there must be a fraudulent intent; and the instrument must be apparently capable of effecting a fraud." Clark, Crim. Law, sec. 118. Our Code defines the crime as follows: "Whoever, with intent to defraud or injure another, falsely makes or alters

any writing of a public or private nature, which might oper-
ate to the prejudice of another, or passes, utters, or publishes,
or attempts to pass, utter, or publish as true and genuine, any
paper so falsely made or altered, knowing the same to be false
or forged, with the intent to defraud or prejudice the right
of another, shall be imprisoned for not less than one year nor
more than ten years." [Code, sec. 843, 31 Stat. at L. 1326,
chap. 854.] It will be observed that the statute defines two
distinct criminal acts, either of which constitutes the crime of
forgery. The making of a false instrument with intent to de-
fraud is forgery. The uttering of a forged instrument with
intent to defraud is forgery. But where the instrument is
both forged and uttered by the same person, as in this case,
there is only the single crime of forgery committed. *State* v.
*Klugherz,* 91 Minn. 406, 98 N. W. 99, 1 A. & E. Ann. Cas.
307.

Intent in forgery will not be presumed from the mere making
of a false instrument. It must be gathered from some affirm-
ative act or from the existence of circumstances from which
criminal intent may be inferred. No such circumstances were
present in this case; hence criminal intent could not be im-
puted to defendant until he uttered the instrument by in-
corporating it in the pleadings in the equity cause. The utter-
ance, therefore, was essential to establish the commission of the
crime charged. To find the existence of an essential element
of the crime—in fact, to find the crime itself—the government
was compelled to search the record in the equity proceeding.
Without it the crime of forgery could not have been established
or even charged against the defendant. It is true that de-
fendant committed the crime of forgery before he incorporated
the instrument into the equity pleading, and its utterance was
only the disclosure of the criminal intent which existed con-
cealed in his mind when he made it. But the record in the
equity case does not serve the mere purpose of amplifying the
evidence already existing of the commission of the crime; it
furnishes not only the sole evidence of intent, an essential
element of the crime itself, but the complete disclosure of the

crime. What before the repeal of the act could not be used as the basis of the charge of forgery and proof of its commission, it is sought by the repeal, not only to make the basis of the crime, but the sole proof of its commission.

Under the existing law the utterance of the forged instrument, and the disclosure of the complete crime of forgery by means of the pleading in a civil suit, did not constitute a crime for which the defendant could be punished, unless it could be established without reference either to the pleadings or evidence of the defendant in the equity case. It is not contended that the crime charged could have been established upon any theory independent of such reference. Had witnesses been produced to prove that the signatures to the contract were all in the handwriting of defendant, they could have testified only to information gained from a reference to the instrument itself as it appeared in the equity pleading. Such reference was expressly forbidden by the statute. Any use of defendant's testimony in the civil proceeding was also forbidden. Witnesses could not have been produced to testify to the substance of defendant's testimony in the equity case, since the immunity granted by the statute extended to both the pleadings and evidence in the civil suit. The immunity granted by the statute is comprehensive. It forbids the use of such evidence or pleadings "in any manner" against the defendant "in any criminal proceeding," except for perjury. If the instrument was a forgery, defendant clearly subjected himself in the equity proceeding to a criminal prosecution for the crime of perjury, the only crime chargeable under the statute.

To sustain this conviction would be equivalent to holding that the repealing statute changed an unpunishable forgery, because of the source of its disclosure, into a punishable forgery. Before the act, defendant, by existing law, was granted absolute immunity from any criminal prosecution growing out of disclosures made by him in the civil proceeding, except for perjury. After the act, it is contended that the immunity no longer exists, and he is liable to answer for another crime, which we must assume but for the immunity would never have been

committed. As was said in *Calder* v. *Bull,* 3 Dall. 386, 1 L. ed. 648, "The restriction not to pass an *ex post facto* law was to secure the person of the subject from injury or punishment in consequence of such law." To sustain the contention of counsel for the government would be to totally disregard the immunity afforded the defendant by the existing law, which this court held in the former case to constitute a substantial right. *Frisby* v. *United States,* 35 App. D. C. 513.

Under the inducement of the existing law, defendant placed in the hands of the prosecution something which could not be used against him or made the basis of the present case, but which, by the repealing act, it is insisted was made competent evidence to establish the crime charged. It must be remembered that this is not an instance of merely increasing the number of witnesses to prove the same case that formerly existed, as in *Hoyt* v. *Utah,* 110 U. S. 574, 28 L. ed. 262, 4 Sup. Ct. Rep. 202, 4 Am. Crim. Rep. 417, or of changing the method of proving an existing fact, as in *Thompson* v. *Missouri,* 171 U. S. 380, 43 L. ed. 204, 18 Sup. Ct. Rep. 922. In each of those cases the evidence made competent by statutes enacted after the commission of the crime (murder in each instance) was of so little consequence as proof, that former convictions had been secured and the death penalty imposed in both cases, without the evidence legislated into existence being used until the second trials. The statute here took the thing upon which the charge of the commission of the crime was predicated, which defendant had placed in the hands of the prosecution before indictment, under the protection and immunity afforded by the existing law, and made it the chief instrument in encompassing his conviction. Can it be said that defendant's situation had not been changed to his disadvantage by the enactment of the repealing act? We think not.

The judgment is reversed, and it is so ordered. *Reversed.*

Mr. Chief Justice SHEPARD dissenting:

I find myself unable to concur in reversing the judgment in this case.

In my opinion, sec. 860, Rev. Stat. U. S. Comp. Stat. 1901, p. 661, regulates procedure, and its repeal is not, as to this appellant, an *ex post facto* law.

Changing a rule of evidence merely, the repealing section did not alter, add to, or diminish the ultimate facts necessary to establish the guilt of the appellant. Having no relation to the amount or degree of proof essential to conviction, it did nothing more than remove a restriction upon the competency of certain evidence. The conditions shown bring the case entirely within the principle declared by the Supreme Court in cases the authority of which has not been limited or impaired in any later decision. *Hopt* v. *Utah,* 110 U. S. 574–589, 28 L. ed. 262–268, 4 Sup. Ct. Rep. 202, 4 Am. Crim. Rep. 417; *Thompson* v. *Missouri,* 171 U. S. 380–387, 43 L. ed. 204–207, 18 Sup. Ct. Rep. 922. As shown in *Thompson's Case,* the statute declared *ex post facto* in *Kring* v. *Missouri,* 107 U. S. 221, 27 L. ed. 506, 2 Sup. Ct. Rep. 443, took from the defendant a complete defense against the charge of murder in the first degree. It was more than a change of procedure affecting the competency of evidence; it operated to increase the degree of crime. The following language of Mr. Justice Harlan, who delivered the opinion of a unanimous Court in *Thompson's Case,* is, in my judgment directly applicable to the conditions here presented: "If persons excluded, upon grounds of public policy, at the time of the commission of an offense, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify, we cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. * * * The statute did nothing more than remove an obstacle arising out of a rule of evidence that withdrew from the consideration of the jury testimony which, in the opinion of the legislature, tended to elucidate the ultimate essential fact to be established; namely, the guilt of the accused."

Section 860, rendering incompetent as evidence in any criminal case against him, the pleadings of a party or any evidence or discovery obtained from him in a judicial proceeding, was the result of the sense of Congress, at the time of its enactment, that it established a rule of evidence in accord with sound public policy. A change of opinion in that regard caused its repeal. The section made no change in, and had no relation to, the substantive criminal law. It merely created a new rule of evidence applicable in criminal cases, and operating generally, which for satisfactory reasons, had been repealed prior to the trial of appellant, thereby restoring the rule of the common law.

I cannot concur in the contention that the section was practically an offer of immunity, of the benefit of which the appellant cannot be deprived by its repeal. Immunity statutes are intended to compel the production of evidence that would, without their protection, tend to show that the witness had committed a crime. See 27 Stat. at L. 443, chap. 83, U. S. Comp. Stat. 1901, p. 3173. *Brown* v. *Walker,* 161 U. S. 591, 40 L. ed. 819, 5 Inters. Com. Rep. 369, 16 Sup. Ct. Rep. 644. In this case the appellant pleaded the forged instrument in his own interest and under no compulsion. In so doing he was protected by the section while it was in force, but he took the risk, as did Hopt and Thompson in the cases cited, that the rule of evidence might subsequently be changed. It is true that the forged instrument was uttered when set up in his answer in the civil suit, and it may be conceded, for the sake of the argument, that it could not be offered in evidence against him in a prosecution for uttering the instrument. But that question is not involved and need not be discussed. Forgery, and uttering a forged writing, are separate and distinct offenses by the terms of section 843 of the Code [31 Stat. at L. 1326, chap. 854], which, in that respect, follows the common law. It is forgery to falsely make or alter any writing of a public or private nature with intent to defraud or injure another. The offense is complete when the writing shall have been falsely made or altered with that intent. Uttering the forged writing is not an ingredient of the offense. It is not perceived that proof of utterance is

essential to conviction of the offense charged, though it would ordinarily be quite sufficient to establish the intent to defraud. That intent may be shown by other facts and circumstances surrounding the transactions, against the proof of which no objection could be made on any valid ground. The government may, indeed, have difficulty in proving the fraudulent intent, if deprived of the right to prove the particular utterance of the forged writing, but it is the same difficulty that would occur in all prosecutions for forgery, where the false writing may never have been uttered at all. If deprived of the right to prove this particular utterance, it ought not to be prevented from using the writing in connection with evidence of other facts and circumstances that might tend to show that it had been falsely made with intent to defraud or injure.

Convinced that the trial court did not err in admitting the writing in evidence, I must dissent from the conclusion of my brethern.