**Alvin J. DIXON, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 5829.**

District of Columbia Court of Appeals.

Argued Oct. 12, 1971.

Decided Jan. 31, 1972.

Rehearing and Rehearing En Banc Denied Feb. 18, 1972.

Harvey L. Zuckman, Washington, D. C., appointed by this court, for appellant.

John A. McCahill, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Robert P. Watkins,

Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and KERN and REILLY, Associate Judges.

KERN, Associate Judge:

At issue in this appeal is the constitutionality of the statute enacted by Congress for the purpose of circumscribing in this jurisdiction the so-called *"Luck"* rule.[1] (The pertinent portions of the statute, both prior to and after amendment, are set forth in the Appendix).

The facts of this case can be stated briefly. A construction company security officer testified for the Government that he saw appellant remove a drill from the back of his company's truck. After the security officer hailed him, appellant kept the drill and began to run. During the chase, which ended with appellant in the clutches of a police officer (who was the only other prosecution witness), appellant dropped the drill. In defense, appellant testified that he was at the construction site looking for a job and someone, whom he had never seen before but thought was a workman, directed him to go over and pick up the drill and bring it back. As he was doing so, appellant claimed that the security officer shouted at him and that he became frightened and ran. The security officer took the stand in rebuttal and stated that he saw no such workman as testified to by appellant. The jury, 15 minutes after it had retired, returned a verdict of guilty of grand larceny[2] and appellant was committed for three to nine years pursuant to 18 U.S.C. § 4253 (The Narcotic Addict Rehabilitation Act) (1970).

While appellant was on the witness stand, the Government was allowed by the trial court to introduce a petit larceny conviction which he had incurred five years earlier. The prior conviction was introduced after a bench conference in which appellant's trial attorney[3] merely inquired as to the applicability of the new standards of D.C. Code 1967, § 14–305 (Supp. IV, 1971, as amended) which were effective when this trial took place. Appellant's trial attorney did *not* request an immediate cautionary instruction to the jury concerning the Government's use of the prior conviction and the trial judge refrained from instructing the jury on this matter until both sides had finished presenting their cases. In the general charge, the jury was instructed, among other things, that it must consider appellant's prior petit larceny conviction only as it showed whether he was telling the truth at trial and not whether he had committed the crime for which he was charged.[4]

1. In Luck v. United States, 121 U.S.App. D.C. 151, 156, 348 F.2d 763, 768 (1965), the United States Court of Appeals for the District of Columbia Circuit held that a trial court was not *required* by the then applicable statute, D.C.Code 1967, § 14–305, " . . . to allow impeachment by prior conviction *every time* a defendant takes the stand in his own defense." (Emphasis added.) The court went on to explain that a trial court in the exercise of its discretion upon such factors as the nature and number of convictions, the age and circumstances of the defendant, and "the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction" (121 U.S.App.D.C. at 157, 348 F.2d at 769), could bar altogether the Government from impeaching or limit the number of prior convictions in impeachment.

2. See D.C.Code 1967, § 22–2201.

3. Appellant has different counsel on appeal.

4. The trial court's instruction was:
In the course of the testimony the defendant was asked about a prior conviction of crime and he admitted that he had previously been convicted of the crime of petit larceny. This is admitted into evidence solely for your consideration in evaluating the credibility of the defendant as a witness. As counsel has said, it is not evidence of his guilt in this case. You may not say to yourself that he was once convicted of petit larceny and therefore he must be guilty in this case. It is admitted solely for

Appellant assails his judgment of conviction with a brace of arguments: (A) The amended statute under which his credibility was impeached by a prior conviction is unconstitutional; (B) even if the statute, as amended, is constitutional, the application of that statute to appellant's case violates the *ex post facto* clause of the Constitution; (C) the trial court committed reversible error by failing to give an immediate cautionary instruction *sua sponte,* following the introduction of appellant's prior conviction during his cross-examination; and, (D) the evidence concerning the value of the drill was insufficient for a jury to find beyond a reasonable doubt that the said value exceeded $100 (the minimum amount for grand larceny).

### 1.

At the outset, we take cognizance of the proposition that an appellate court has discretion to decline to consider constitutional questions raised for the first time on appeal, as is true of this case, and we note that the United States Court of Appeals for the District of Columbia Circuit has declined on several occasions to review the constitutionality of the statute in question, prior to its recent amendment, *e. g.* Weaver v. United States, 133 U.S.App.D.C. 66, 408 F.2d 1269 (1969), cert. denied, 395 U.S. 927, 89 S.Ct 1785, 23 L.Ed.2d 245 (1969); Trimble v. United States, 125 U.S.App.D.C. 173, 369 F.2d 950 (1966). Nevertheless, the constitutional issue has been carefully and clearly ventilated by the parties to this appeal and is a recurring problem for the trial court.[5] On balance we are persuaded that we should face up to and decide the constitutional issue vigorously argued to us in this case.

■ Appellant contends that the introduction of his prior petit larceny conviction under D.C.Code 1967, § 14–305 (Supp. IV, 1971), as amended,[6] at his trial on the grand larceny charge denied him due process of law and a trial by impartial jury in violation of his fifth and sixth amendment rights because it created the very real danger that the jury relied upon the impeaching material rather than the evidence adduced to find him guilty.

Appellant's argument relies heavily upon a series of decisions by our Circuit Court which questioned the ability of juries in criminal trials to differentiate between the issues of impeachability and guilt and which sought to lay down guidelines under the predecessor of the statute in question that might alleviate undue prejudice resulting from the introduction of prior convictions for impeachment purposes. *See* Blakney v. United States, 130 U.S.App.D.C. 87, 89, 397 F.2d 648, 650 (1968) (concurring opinion per McGowan, J.); Barber v. United States, 129 U.S.App.D.C. 193, 195, 392 F.2d 517, 519 (1968); Gordon v. United States, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); Brown v. United States, 125 U.S.App.D.C. 220, 222, 370 F.2d 242, 244 (1966); Pinkney v. United States, 124 U.S.App.D.C. 209, 211, 363 F.2d 696, 698 (1966).

In particular, the decision in Weaver v. United States, *supra,* implied that, notwithstanding appropriate limiting instructions, the introduction of prior convictions for purposes of impeachment *may* be violative of defendants' fifth amendment rights to due process. We also take note of commentators who have questioned the balance between the probative value of such

---

your assistance in judging his credibility in this case, as a witness. You may say to yourself, would a man who has been previously convicted of a crime of that nature be unlikely to tell you the truth as one who has not. That is the sole purpose for which it is admitted in

evidence—for your evaluation. (Tr. at 49.)

5. At least three trial judges have ruled, in differing ways, on the constitutionality of the newly enacted impeachment statute.

6. *See* Appendix.

evidence for impeachment and its potential for prejudice.[7]

Nevertheless, appellant has presented no cases in this or any other jurisdiction, and we have found none, which specifically find that due process is denied in criminal trials solely because a defendant who has taken the witness stand is impeached by the introduction of a valid prior conviction.[8] On the contrary, our reading of recent federal and state cases indicates quite clearly that the tradition of utilizing evidence of *valid* prior convictions for purposes of impeachment is in no manner being considered as violative of due process, *e. g.,* McGautha v. California, 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971); Spencer v. Texas, 385 U.S. 554, 560–564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Wilson v. Wiman, 386 F.2d 968, 970 (6th Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed. 2d 303 (1968); State v. Hawthorne, 49 N. J. 130, 228 A.2d 682 (1967). Compare United States v. Tucker, 404 U.S. ——, 92

S.Ct. 589, 30 L.Ed.2d 592 (No. 70–86, decided Jan. 11, 1972); Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). As the majority state in Spencer v. Texas, *supra* 385 U.S. at 561, 87 S.Ct. at 652,[9] "the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence."

Therefore, assuming proper instructions concerning the jury's consideration of such evidence are given (discussed *infra*), we conclude in accordance with the overwhelming majority of American jurisdictions that the potential for prejudice is outweighed by the probative value of prior convictions as it relates to credibility.

Appellant's reliance on Chief Justice Taft's famous statement in Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)[10] is misplaced. In *Tumey's* long and colorful history as a leading case of judicial *dis*qualification,[11]

---

7. *See* Borchard, Convicting the Innocent 136–140, 158–164, 364–367 (1961); Frank, Not Guilty 106–107 (1957); McCormick, Evidence § 43 (1954); Note, "Procedural Protections of the Criminal Defendant—A Reevaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crime," 78 Harv.L.Rev. 426, 440–445, 450 (1964); Note, "Other Crimes Evidence at Trial: Of Balancing and Other Matters," 70 Yale L.J. 763, 774–778 (1961).

8. In United States ex rel. Scoleri v. Banmiller, 310 F.2d 720 (3rd Cir. 1962), cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963), the court (with three judges dissenting), did find a violation of due process in a capital offense case where twenty-five prior convictions were introduced against the defendant under a statutory procedure for the purposes of jury determination of the penalty. Though the court did state that in this particular capital case the defendant's rights to due process of law were gravely prejudiced by the introduction of his twenty-five prior convictions, the Third Circuit has not extended this principle to cover prior convictions introduced solely for impeachment in all criminal cases and we do not read the case to reach that broadly.

9. We note that Chief Justice Warren's dissent in *Spencer* at 577, 87 S.Ct. 648, 17 L.Ed.2d 606 clearly implies that he considers the use of prior convictions for impeachment to be nonviolative of due process in *contrast* to the use of convictions evidence in trials involving recidivist statutes. He indicates that prior convictions are arguably probative of credibility which is relevant to the jury's finding of guilt or innocence since the jury must determine the weight to be given to the defendant's version of the facts.

10. "Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the latter due process of law."

11. The doctrine established by the court in *Tumey* that one is entitled to trial by an unbiased and non-partisan trier of facts has been extended to administrative bodies [NLRB v. Phelps, 136 F.2d 562, 563 (5th Cir. 1943)]; court-appointed lawyers [Sawyer v. Brough, 239 F.Supp. 898, 901 (Md.1965)]; justices of the peace [Bramlett v. Peterson, 307 F.Supp. 1311 (M.D.Fla.1969)]; as well as jurors,

we have found no case which has even suggested that evidence of prior convictions for the purposes of impeachment offers the type of "temptation" to juries to forget the burden of proof in a criminal case about which Chief Justice Taft was concerned.

Likewise, we do not find appellant's references to Groppi v. Wisconsin, 400 U.S. 505, 509, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971) and Estes v. Texas, 381 U.S. 532, 543, 565, 85 S.Ct. 1628, 14 L.Ed.2d 543 (concurring opinion by Warren, C. J.) (1965), both of which involved situations where pre-trial publicity seriously endangered the right to trial by an impartial jury, to be persuasive. *See also* United States v. Smith, 200 F.Supp. 885 (Vermont 1962). Valid prior convictions introduced for purposes of impeachment during a criminal defendant's cross-examination, coupled with appropriate instructions to the jury, have never been considered to be, and we do not now consider them to be, the means of creating partiality on the part of the jury toward the Government's case in violation of the sixth amendment rights of the defendant.

Given the presumption of constitutionality which attaches to Acts of Congress, United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561, rehearing denied, 372 U.S. 961, 83 S.Ct. 1011, 10 L.Ed.2d 13 (1963); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435, rehearing denied, 364 U.S. 854, 81 S.Ct. 29, 5 L.Ed.2d 77 (1960), we hold that appellant has not demonstrated that Section 14-305, as amended is inherently prejudicial to his fifth and sixth amendment rights to a fair trial by an impartial jury.

2.

■ Appellant's alternative contention is that even if the fifth and sixth amend-

ments do not prohibit outright the use of *all* prior convictions evidence for impeachment purposes, these amendments *do require* that the trial judge be given the discretion to exclude the introduction of *certain* prior convictions which may be unreasonably prejudicial to the accused. In essence, what appellant argues is that the so-called *"Luck"* doctrine had constitutional underpinnings and therefore Congress cannot constitutionally remove the word "may" [12] from the statute.

Appellant relies heavily on the Supreme Court's general observation in Spencer v. Texas, *supra*, that when a criminal defendant's prior convictions are introduced for one of several accepted purposes, his interests are protected (1) by limiting instructions and (2) by "the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence." [385 U.S. at 561, 87 S.Ct. at 652.]

We have carefully examined the *Spencer* decision and we conclude the Court's statement quoted above *does not* amount to a declaration that judicial discretion to exclude prejudicial prior convictions is constitutionally required.

First, the quotation from *Spencer* was taken from that part of the opinion which dealt with the Court's general survey of the existing rules of evidence throughout the states. Given the *descriptive* context of the statement, we cannot conclude that the Court meant to *declare* a general constitutional principle applicable to *all types* of prior conviction uses—especially in view of the fact that the Court was there concerned only with prior conviction evidence under the Texas *recidivist* statute.

Second, we believe that the entire thrust of *Spencer* is that when testing the consti-

[Orvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L.Ed.2d 751 (1960); United ed States v. McCorkle, 248 F.2d 1, 8 (3rd Cir.), cert. denied, 355 U.S. 873, 78 S. Ct. 121, 2 L.Ed.2d 77, rehearing denied,

355 U.S. 908, 78 S.Ct. 329, 2 L.Ed.2d 263 (1957)].

12. *See* Appendix.

tutionality of the various state evidentiary codes, the Court will be hesitant in invalidating state procedures, even though they *may* possibly be prejudicial and limiting instructions *may* perhaps be inadequate to vitiate prejudicial effects, Spencer v. Texas, *supra* at 562, 87 S.Ct. 648, 17 L.Ed.2d 606. In this setting, we deem it most unlikely that the Court intended to declare a broad doctrine, as appellant contends, that judicial discretion to admit or exclude prior convictions as well as limiting instructions were *constitutionally* required before prior convictions could be introduced for any purpose.

Appellant also maintains that because juries are allegedly incapable of the "mental gymnastic"[13] of considering prior convictions solely for impeachment, the Constitution *requires* that the trial judge retain discretion to exclude from the jury's consideration some unduly prejudicial convictions introduced for impeachment. He points to several prior decisions here by our Circuit Court which question juries' abilities to consider prior convictions solely for impeachment purposes,[14] especially where, as in the instant case, the prior conviction is for a crime similar to the offense charged. *See generally* Gordon v. United States, 127 U.S.App.D.C. 343, 347, 383 F.2d 936, 940 (1967), cert. denied, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968) ; United States v. Hildreth, 387 F.2d 328, 329 (4th Cir. 1967) ; Commonwealth v. Chapasco, 436 Pa. 143, 148, 258 A.2d 638, 643 (1969). Appellant concludes that the introduction of such prior conviction evidence for impeachment creates the type of danger to which the Supreme Court alluded in Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), when it declared that:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored.

We do not read the above statement in *Bruton* to be controlling on prior conviction evidence. That statement was based upon a factual situation concerning inadmissible hearsay evidence inculpating the defendant in a joint criminal trial in which it was obvious that no limiting instruction could mitigate the prejudicial effects of the hearsay. Here, by contrast, the prior conviction was admissible, and a clear, comprehensible limiting instruction was given to the jury.

As to the expressions by the Circuit Court, with all deference, we are not persuaded that the potential for prejudice which arises from this type of evidence is so great, that even if appropriate instructions are given to the jury (discussed *infra*), the Constitution requires the trial judge also to have discretion to exclude if he finds the prior conviction unduly prejudicial.

We point out that the *Luck* doctrine of judicial discretion was based not upon constitutional grounds but upon the premise that Congress deliberately had employed the word "may" in the former Section 14–305 for the purpose of allowing trial judges to exclude some prior convictions used for impeachment, Luck v. United States, 121 U.S.App.D.C. 151, 156–157, 348 F.2d 763, 768–769 (1965).[15] Once Congress removed the word "may" from the pertinent part of the statute and decided to align the District of Columbia with the vast majority

---

13. Nash v. United States, 54 F.2d 1006, 1007 (2d Cir.), cert. denied, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932) ; United States v. Bussey, 139 U.S.App. D.C. 268, 272, 432 F.2d 1330, 1334 (1970).

14. *See* the cases cited at page 92.

15. *See* State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967), where the New Jersey Supreme Court interpreted a statute very similar to the old version of § 14–305 to *preclude* trial judges from exercising discretion to exclude prior convictions offered for impeachment on the grounds of remoteness.

of jurisdictions which do not repose such discretion in trial judges, *see* H.R.Rep. No.91–907, 91st Cong., 2d Sess. 62 (1970), the justification declared in *Luck* and succeeding cases for the evidentiary rule was also removed. *See* Taylor v. United States, D.C.App., 280 A.2d 79, 81 (1971). Though the decisions in Weaver v. United States, *supra,* and Trimble v. United States, *supra,* may imply that the judicial discretion which had been read by *Luck* into Section 14–305, prior to its amendment, "softened" the due process attack upon the use of prior convictions for impeachment purposes, neither of those cases held that judicial discretion to exclude prior conviction evidence was constitutionally required.

In analyzing appellant's arguments, *it* should be remembered that appellant must overcome the presumption of the constitutionality of Section 14–305, United States v. National Dairy Products Corp., *supra*; Flemming v. Nestor, *supra,* and that it is our judicial duty to adopt, where possible, a construction of a statute which sustains its constitutionality rather than a construction which destroys it, Schneider v. Smith, 390 U.S. 17, 26, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968); Lynch v. Overholser, 369 U.S. 705, 711, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962).[16]

In our view Congress has simply made an effort to avoid the type of confusion[17] that was generated by the *Luck* decision by declaring certain specific rules of admissibility which are in accord with the practice found in an overwhelming majority of jurisdictions. We are not persuaded that juries are so prone to ignore or misinterpret appropriate limiting instructions on this type of evidence that the fifth and sixth amendments require that the trial judge retain some discretion to exclude any prior convictions which meet the criteria Congress has set forth in Section 14–305, as amended.

### 3.

◾ Appellant's next contention is that the admission into evidence of his petit larceny conviction violated the *ex post facto* clause of the Constitution[18] because his guilt was not determined according to the law that prevailed on January 8, 1971, the date on which he allegedly took the drill. He argues that the judicial discretion to exclude prior convictions, which was embodied in Section 14–305 prior to its amendment, amounted to a "right of defense which the law gave him when the act was committed," Kring v. Missouri, 107 U.S. 221, 225, 2 S.Ct. 443, 447, 27 L.Ed. 506 (1883). *See also* Frisby v. United States, 38 App.D.C. 22, 24 (1912).[19] Appellant's argument cannot be sustained.

As the Supreme Court stated in Beazell v. Ohio, 269 U.S. 167, 170–171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925), ". . . it is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited . . ." by the *ex post facto* clause of the Constitution and this includes statutes which change the "rules of evidence . . . so as to render admissible against the accused evidence previously held inadmissible." Thompson v. Missouri, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898).

---

16. *See* Judge Daly's thoroughly researched and well-written opinion in United States v. Jackson, 99 Wash.L.Rep. 1177 (1971), in which he adopts a constitutional construction of § 14–305, as amended.

17. *See* United States v. Jackson, *id.*; State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967) (concurring opinion per Weintraub, C. J.); H.R.Rep.No.91–907, *supra* at 63.

18. U.S.Const. art. I, § 9, cl. 3.

19. It will be observed . . . that a law to be *ex post facto* must be one that deprives the person accused of crime of a substantial right in which he was protected and granted immunity by the law in force at the time of the commission of the offense.

So long as the statutory change affecting the admissibility of evidence does not increase the punishment or change the ingredients of the offense or the ultimate facts necessary to establish guilt, Thompson v. Missouri, *id.* at 385, 18 S.Ct. 922, Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884); Landay v. United States, 108 F.2d 698, 705 (6th Cir. 1939), cert. denied, 309 U.S. 681, 60 S.Ct. 721, 84 L.Ed. 1024 (1940); United States v. Papworth, 156 F.Supp. 842, 852 (N.D.Texas 1957), it does not deprive the accused of a right of defense which he enjoyed under the law at the time he committed the offense charged.

In the instant case, the introduction of appellant's prior conviction did not deprive him of any defense, modify the elements of proof, or deny him any substantial immunity which he had under Section 14–305 prior to its amendment.[20] We hold that the application of Section 14–305, as amended, in the trial for this offense, which was committed prior to the effective date of said statute, did not violate the *ex post facto* clause of the Constitution.

4.

Appellant's final contention[21] is that the trial judge committed plain error when he failed to give to the jury *sua sponte* a cautioning instruction regarding the limited purpose for which appellant's prior conviction was being admitted at the time the Government introduced it. Appellant relies upon this court's statement in Lofty v. United States, D.C.App., 277 A.2d 99, 101 (1971), which was taken from the Circuit Court's decision in United States v.

McClain, 142 U.S.App.D.C. 213, 218, 440 F.2d 241, 246 (1971), that *"whenever* evidence is brought in which is admissible only for a limited purpose, *it is plain error*, in the absence of manifest waiver, *to omit an immediate cautioning instruction."* [22] (Emphasis added). For the reasons stated below, we do not find the quotation from Lofty v. United States, *supra*, to be controlling.

We begin by analyzing this court's decision in *Lofty*. There we were simply following the doctrine established by the Circuit Court in Coleman v. United States, 125 U.S.App.D.C. 246, 371 F.2d 343 (1966), cert. denied, 386 U.S. 945, 87 S.Ct. 979, 17 L.Ed.2d 875 (1967), and Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967), which requires an immediate cautionary instruction to the jury *sua sponte* by the trial court when a party, taken by surprise by its own witness, introduces a prior inconsistent statement by that witness for purposes of impeachment under D.C. Code 1967, § 14–102. Since the facts in *Lofty* did involve an attempt to impeach one's own witness with a prior inconsistent statement, we quite properly applied the *Coleman-Jones* doctrine, and we take it as established that whenever this factual situation is presented such an instruction must be given, whether or not defense counsel requests it.

We do not regard the later reference in *Lofty* to the Circuit Court's statement in United States v. McClain, *supra*, as controlling on facts not involving impeachment of one's own witness by prior inconsistent statements. We note that the *McClain* decision itself has been restricted by

---

20. After all, even under the applicable statute prior to its amendment, appellant's prior petit larceny conviction would have been admissible unless the trial judge determined that its potential for prejudice outweighed its probative value for impeachment.

21. As to appellant's argument that there was insufficient evidence of grand larceny (as opposed to petit larceny), we think that the *uncontradicted* and *unob-*

*jected* to hearsay evidence of the value of the drill was enough from which a reasonable jury might find beyond a reasonable doubt that the drill exceeded $100 in value to sustain a conviction for grand larceny. *See* Chew v. United States, 112 U.S.App. D.C. 6, 298 F.2d 334 (1962), Annot., 79 A.L.R.2d 890, 896–932 (1961).

22. *Cf.* United States v. Bobbitt, 450 F.2d 685, 691 (D.C.Cir., 1971) (*dictum*).

recent decisions of that court, *e. g.,* United States v. Mizzell, 452 F.2d 1328 (D.C. Cir., 1971); United States v. Bobbitt, 450 F.2d 685 (D.C. Cir., 1971).

In addition, the language of *McClain,* cited by appellant and quoted above, was merely part of an alternative holding, which although making a reference to *Jones,* failed to examine the implications for trial procedure that would arise from the application of such a broadly-worded rule. If an immediate cautionary instruction, unless specifically waived by counsel, were required "whenever evidence is brought in which is admissible only for a limited purpose" (the literal rule declared by *Mc-Clain*), a trial would be transformed into a series of bench conferences between trial court and counsel and constant admonitions from judge to jury. Such a procedure would only impair orderly trial procedure and undermine defendant's opportunity to have a coherent, and therefore fair, trial. The burden placed upon the trial court to determine during trial which bits and pieces of evidence offered are admissible for a limited purpose and when to give the required limiting instruction would be intolerable. Furthermore, the door would always be left open for counsel on appeal

to scrutinize the trial record and to allege and argue plain error *whenever* evidence was introduced at trial for a limited purpose and neither an immediate instruction nor a manifest waiver by trial counsel appeared on the record.

We believe that the wiser approach is to examine on a case by case basis the particular type of evidence sought to be introduced and then determine, as the courts have done in *Coleman, Jones* and *Lofty,* if an immediate cautionary instruction, *sua sponte* by the trial court, is required to prevent confusion on the part of the jury and thereby to protect the defendant's interests.

In considering the propriety of a rule which would require an *immediate* cautionary instruction *sua sponte* by the trial court (unless trial counsel specifically requests no instruction),[23] it is important to note that such a rule would be a departure from the practice found generally throughout the United States. An extensive examination of the law of both state and federal jurisdictions reveals that, as a general rule, counsel *must request* an instruction on evidence which is admitted for a special or limited purpose,[24] and this has been applied

23. Trial counsel may have sound tactical reasons for not wishing the jury to be instructed at this point in the trial on the defendant's prior convictions because an instruction may over-emphasize the importance of the convictions in the minds of the jurors. *See generally* People v. Durham, 66 Ill.App.2d 163, 212 N.E.2d 765, 768 (Ill.); Sica v. United States, 325 F.2d 831, 836 (9th Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964).

24. 23A C.J.S. Criminal Law § 1325(5); United States v. Solomon, 422 F.2d 1110, 1114 (7th Cir. 1970); Wilson v. Wiman, 386 F.2d 968, 970 (6th Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1968); United States v. Curry, 358 F.2d 904, 912 (2d Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 rehearing denied, 387 U.S. 949, 87 S.Ct. 2079, 18 L.Ed.2d 1341 (1966); United States v. Vastine, 363 F.2d 853, 855 (3d Cir. 1966); Nutt v. United States, 335 F.2d 817, 819 (10th

Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180 (1964); Newman v. United States, 331 F.2d 968, 971 (8th Cir. 1964), cert. denied, 379 U.S. 975, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965); Dirring v. United States, 328 F.2d 512, 515 (1st Cir.), cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed.2d 1052 rehearing denied, 379 U.S. 874, 85 S.Ct. 27, 13 L.Ed.2d 83 (1964); Sica v. United States, 325 F.2d 831, 836 (9th Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964); Blakeley v. United States, 249 F.2d 235, 236 (5th Cir. 1957); McCall v. United States, 89 U.S.App.D.C. 153, 154, 191 F.2d 470, 471 (1951); People v. Mason, 259 Cal.App.2d 30, 66 Cal.Rptr. 601 (1968); Commonwealth v. Cook, 351 Mass. 231, 218 N.E.2d 393, 397, cert. denied, 385 U.S. 981, 87 S.Ct. 529, 17 L.Ed.2d 443 (1966); Stitely v. United States, D.C.Mun.App., 61 A.2d 491, 492 (1948); Sedlacek v. State, 147 Neb. 834, 25 N.W.2d 533, 548.

to the admission of prior convictions for purposes of impeachment, *see* Wilson v. Wiman, 386 F.2d 968, 970 (6th Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1968); Nutt v. United States, 335 F.2d 817, 819 (10th Cir.), cert. denied, 379 U.S. 909, 85 S.Ct. 203, 13 L.Ed.2d 180 (1964); People v. Baker, 7 Mich.App. 7, 151 N.W.2d 217 (1967); People v. Durham, 66 Ill.App.2d 163, 212 N.E.2d 765, 768; Roy v. Commonwealth, 191 Va. 722, 62 S.E. 2d 902 (1951). Even in jurisdictions, such as Ohio and Michigan, which have required immediate cautionary instructions when certain types of evidence have been introduced, *e. g.*, People v. Askar, 8 Mich.App. 95, 153 N.W.2d 888 (1967); Baxter v. State, 91 Ohio St. 167, 110 N.E. 456 (1914), the courts have recently been reluctant to find plain error where a *sua sponte* instruction was not given immediately, unless the appropriate instruction was also omitted from the general charge to the jury, People v. Kelly, 26 Mich.App. 148, 182 N.W.2d 8 (1970); State v. Crafton, 15 Ohio App.2d 160, 239 N.E.2d 571 (1968).

To be sure, some types of evidence may be so confusing to a jury that an immediate instruction is required, with or without a request by counsel. For example, the situation which confronted the court in *Coleman, Jones,* and *Lofty* justified an immediate instruction *sua sponte* by the trial court because jury confusion undoubtedly occurred where trial counsel suddenly claimed surprise at his own witness's testimony, and was then allowed to introduce

for the purposes of impeachment a prior statement made by that very witness inconsistent with what he had just testified to from the stand.

After careful consideration, we believe that the high probability of jury confusion in the "prior inconsistent statement" cases which required the exceptional use *sua sponte* of an immediate cautionary instruction by the trial court is not present in the case of "prior convictions" evidence used for impeachment. We are not persuaded that juries which are properly instructed at the conclusion of trial will generally misapprehend in the absence of an immediate cautionary instruction during trial the limited purpose of the prior conviction evidence. Thus, we do not regard it as plain error affecting substantial rights within the meaning of D.C.Code 1967, § 11–721(e) (Supp. IV, 1971),[25] if, as in the instant case, counsel *fails*. to request such an instruction from the bench and no immediate cautionary instruction is given.[26]

██ Whether an omission *altogether* of a limiting instruction from the trial court's general charge to the jury (even if the instruction were not requested by counsel) would amount to plain error affecting substantial rights is not at issue in the instant case since a clear and comprehensive instruction was, ·commendably, given by the trial judge. Nevertheless, because of the importance which we have attached to cautionary instructions in assuring the basic fairness necessary to uphold the constitutionality of the use of prior convictions,[27]

25. Section 11–721(e), as now amended, provides:
> On the hearing of any appeal in any case, the District of Columbia Court of Appeals shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

*See also*, D.C.Super.Crim.Rule 52(b).

26. Since our trial judges must conduct a bench conference to determine if the prior conviction comes within the requirements for admissibility set forth in the newly enacted Section 14–305, counsel does have an opportunity *to request* an immediate

instruction if the conviction is introduced. In our view, such a request *may* be granted if the trial judge, within his sound discretion, concludes that an *immediate* instruction is necessary under the facts and circumstances· of a particular case to prevent jury confusion between the issue of credibility and guilt of the offense charged.

27. *See* Lee v. People, 460 P.2d 796, 800 (Colo.1969); People v. Stanworth, 71 Cal.2d 820, 80 Cal.Rptr. 49, 63–64, 457 P.2d 889, 903 (1969) and the discussion of the constitutionality of the general use of ,prior convictions in section 1 of this opinion.

the omission altogether of any cautionary instruction on a prior conviction admitted for impeachment would seem to affect defendants' substantial rights, unless it could be shown under the facts of the particular case that such omission was harmless. *See* Cobb v. United States, D.C.App., 252 A.2d 516 (1969).

5.

To recapitulate for the guidance of the trial court, we hold that Section 14–305, as amended by Congress, is *not* violative of the fifth and sixth amendment rights to fair trial by an impartial jury. Also, the statute, as applied in this case, is not an *ex post facto* law prohibited by the Constitution.

We further hold that the trial court is not required, *sua sponte*, during the course of trial immediately after a defendant has been impeached by a prior conviction to instruct the jury that it must limit its consideration of that prior conviction only to the issue of his credibility and not as to his guilt or innocence of the offense charged. However, the trial court *may* so instruct if,

(a) the defendant by his counsel requests such an instruction,[28] *and*,

(b) the trial court in the exercise of its sound discretion concludes that under the particular facts and circumstances of the case there is a demonstrable need for such instruction to prevent jury confusion between the issue of appellant's credibility and the issue of his substantive guilt.

Finally, we are of opinion that failure by the trial court to give a limiting instruction in its *final* charge to the jury when a prior conviction has been admitted for the purpose of impeaching a defendant (in the absence of an affirmative and specific re-

quest from his counsel to omit any reference at all to such prior conviction),[29] would constitute plain error affecting defendant's substantial rights, unless that omission could be shown under the particular facts and circumstances of the case to have been harmless.

Affirmed.

APPENDIX

Prior to its recent amendment, D.C.Code 1967, § 14–305 provided in pertinent part:

A person is not incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime. The fact of conviction *may* be given in evidence to affect his credibility as a witness, either upon the cross-examination of the witness or by evidence aliunde . . . . (Emphasis added.)

Following its amendment by the "District of Columbia Court Reform and Criminal Procedure Act of 1970" (Pub.L. 91–358, § 133(a), title I, 84 Stat. 550), D.C.Code 1967, § 14–305 (Supp. IV, 1971) provides in pertinent part:

(a) No person is incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of a criminal offense.

(b) (1) Except as provided in paragraph (2), for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense *shall* be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dis-

---

28. Any contention made subsequent to trial that defense counsel's failure to request an immediate instruction indicated lack of professional competence would be most difficult to maintain successfully since the tactical reasons for minimizing a prior conviction in front of the jury are clearly recognized (*See* note 23). *See generally* United States v. Howard, 139 U.S.App.D.C. 347, 351, 433 F.2d 505, 509 (1970); Troublefield v. United States,

125 U.S.App.D.C. 339, 346, 372 F.2d 912, 919 (1966).

29. In view of the accepted tactical considerations referred to in note 23, it would also be most difficult to maintain that a specific request by trial counsel that *no* limiting instruction be given in the final charge to the jury on the prior conviction amounted to a lack of professional competence.

honesty or false statement (regardless of punishment). . . .

(2) (A) Evidence of a conviction of a witness is inadmissible under this section if—

(i) the conviction has been the subject of a pardon, annulment, or other equivalent procedure granted or issued on the basis of innocence, or

(ii) the conviction has been the subject of a certificate of rehabilitation or its equivalent and such witness has not been convicted of a subsequent criminal offense.

(B) In addition, no evidence of any conviction of a witness is admissable [sic] under this section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) the expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense. . . . (Emphasis added.)